IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| APPLICATION OF GAZPROM LATIN § | |
| AMERICA SERVICIOS, C.A., § | MISC. ACTION NO. _____ |
| § | |
| Applicant. § | |
| § | |

**APPLICATION OF GAZPROM LATIN AMERICA SERVICIOS, C.A.
FOR ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

Petitioner, Gazprom Latin America Servicios, C.A. ("*Gazprom*") respectfully files this Application for Assistance Pursuant to 28 U.S.C. § 1782 (this "*application*") from respondents Lindsayca, Inc. and Jean-Marc Pivert ("*respondents*") and, in support hereof, would respectfully show the Court as follows:[1]

### I.   PRELIMINARY STATEMENT

Gazprom seeks to compel personal testimony and production of documents of an individual and a corporation located in the Southern District of Texas. The purpose of Gazprom's discovery request is to assist the Twelfth Court of First Instance in Civil, Commercial, Transit and Banking Matters for the Judicial District of the Metropolitan Area of Caracas, Venezuela (the "*Venezuelan Court*") in evaluating a pending dispute, and an ancillary seizure case, in part, related to payment of an invoice in connection with a service contract for the construction and installation of a natural gas compression plant in Venezuela. Neither the individual nor the corporation from whom discovery is sought are parties to the proceedings in Venezuela. Gazprom is an interested party that has been named as a defendant in those proceedings. Thus all elements of a 28 U.S.C. § 1782 petition are amply satisfied.

---

[1] Petitioner also has filed a memorandum of law in support of this application and a proposed order.

Without the assistance of this Court in providing for discovery, it is virtually impossible conceptually and logistically for the Venezuelan Court to administer justice. Further, Gazprom has a right to discovery for purposes of establishing its affirmative defenses, defenses, preparing its compulsory and permissible counter-claims, and developing a potential independent action against Jean-Marc Pivert in Venezuela, or his joinder in the Venezuelan Court proceeding. Lastly, discovery assistance is needed concerning a venue clause contained in the service contract that raises mixed questions of fact and law. Discovery here too is warranted in order to aid the Venezuelan Court in its pending jurisdictional determination and to help segregate potential judicial and arbitral claims and parties.

## II.   APPLICANT AND RESPONDENTS

1. Petitioner Gazprom Latin America Servicios, C.A. is a Venezuela *compañía anónomia* (i.e., privately-held corporation) with its principal place of business in Caracas, Venezuela.

2. Respondent Lindsayca, Inc. (formerly known as Lindsayca USA, Inc.) ("*Lindsayca*") is a Texas corporation with its principal place of business at 14350 Chrisman Rd., Houston, TX 77039-1509, which is located within this Court's jurisdiction.

3. Respondent Jean-Marc Pivert ("*Pivert*") is a Texas resident owning residential property located at 38 Skyflower Drive, Spring, TX 77381-2981, which is within this Court's jurisdiction. Mr. Pivert has the same professional address in Houston, TX as respondent Lindsayca.

## III.   JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 1782(a), which provides that "a district court in a district in which a person resides or is found

may order discovery for use in a foreign tribunal upon application of any interested person."

5. Because respondents reside or may be found in the Southern District of Texas, venue is proper pursuant to 28 U.S.C. § 1782(a).

6. This Court has personal jurisdiction over respondents because they are both residents of Texas and are therefore subject to general jurisdiction in this state.

### IV. THE VENEZUELAN COURT PROCEEDING

7. On November 7, 2013 Lindsay, C.A. ("Lindsay"), filed a complaint against Gazprom in the Venezuelan Court.[2] The complaint alleges that Gazprom owes Lindsay for an unpaid invoice amount of eight million, seven hundred eighty-one thousand, one hundred ninety-six Venezuelan Bolivares and seventy-five cents (8,781,196.75), plus interest and legal fees and costs.

8. On February 18, 2014, in response to Lindsay's complaint, Gazprom filed its First Petition Based on Lack of Jurisdiction, which asserts that the Venezuelan Court lacks subject matter jurisdiction to hear Lindsay's claim, based on a venue provision in the operative Contract between Lindsay and Gazprom.[3]

9. Concurrent with the filing of the complaint, Lindsay also petitioned the Venezuelan Court for issuance of an order providing for seizure against Gazprom, which, in accordance with Venezuelan procedural rules, must be administered as a separate case, despite its ancillary ties to the main action.

---

[2] A true and correct copy of Lindsay's Complaint, as well as a certified English translation, is attached hereto as **Exhibit A**.

[3] A true and correct copy of Gazprom's First Petition Based on Lack of Jurisdiction, as well as a certified English translation, is attached hereto as **Exhibit B**.

10. On February 17, 2014, Gazprom filed an opposition to the seizure, asserting that the Venezuelan Court lacks jurisdiction to order seizure of Gazprom's movable assets, and that any such seizure would be against public policy.

### V.  GENERAL ALLEGATIONS

11. In the Venezuelan Court litigation proceedings, Lindsay alleges that Gazprom is indebted to Lindsay for non-payment of a single invoice related to a service contract (the "*Contract*") for the construction and installation of a natural gas compression plant in Venezuela (the "*Plant*").[4]  Although ostensibly a dispute arising from alleged non-payment of a single invoice, the services rendered in connection with that invoice concern an approximately U.S. $43 million construction project.

12. Gazprom contends that no payments are owed.  In fact, although it has not yet so alleged, Gazprom opines and shall allege that Lindsay has over invoiced and under performed through the entirety of the Plant's construction.  Moreover, Gazprom shall assert that Lindsay has sought and received payment for three categories of services that were (i) never approved, (ii) not provided, and/or (iii) rendered below governing industry and contractual standards.  Gazprom's averments in the form of defenses, permissive and compulsory counterclaims, and a third-party complaint shall further assert that over-payment for services never rendered and for materials that were not provided was the product of a systematic scheme to bilk Gazprom in favor of Lindsay and certain individuals formerly with Gazprom and now employed with Lindsay.

13. The records purporting to chronicle and document approvals, inspections, modifications, and certification safeguards under the Contract are incomplete and demonstrate

---

[4] A true and correct copy of the Contract, as well as a certified English translation, is attached hereto as **Exhibit C**.

indicia of illicit tampering and of grossly negligent or intentionally incomplete bookkeeping practices by former Gazprom employees now under Lindsay's employment.

14. The performance of the Contract was riddled with indicia of fraudulent conduct. The furtive conduct extends virtually to every aspect of the Contract's execution and the Plant's construction. Even though the entire scope and ramifications of these irregularities remain opaque, some concrete factual predicates explaining the manner in which the fraudulent undertakings were rendered have surfaced.

15. At all times material to exertion under the Contract, performance under the Contract was supervised by Jean-Marc Pivert, Gazprom's former General Manager. Mr. Pivert currently is employed with Lindsayca, a subsidiary of Lindsay. Gazprom opines that there was an extended period of time of approximately one year during which Mr. Pivert managed and directed Gazprom, *while being employed by or receiving benefits* from Lindsayca.

16. During this approximately one year time frame Mr. Pivert used his "apparent authority" as a senior Gazprom official, to cause Lindsay to secure unjustified benefits to Gazprom's detriment. Mr. Pivert was supported in this illicit conduct by other former Gazprom employees now believed to be working for Lindsay or its affiliates.

17. Consequently, evidence related to the Contract is not readily available. Much of this evidence likely has been discarded, secreted, or otherwise altered. Absent discovery, it is virtually impossible for the Venezuelan Court to administer justice in the two subject proceedings in that jurisdiction. The very factually intense nature of the execution of the Contract and construction of the Plant, without more, also underscore the exigent need for discovery of material evidence that is both (i) necessary to the Venezuelan court, but (ii) beyond its ambit.

## V.   DISCOVERY SOUGHT

18. Gazprom seeks discovery with respect to four fundamental aspects of the litigation in Venezuela. First, Gazprom seeks evidence pertaining to the invoice at issue for purposes of establishing its defenses, affirmative defenses, and counter-claims to Lindsay's complaint, and helping the Venezuelan Court gain access to this necessary information. Discovery in the form of depositions and requests for production of documents is critical if a presentation of relevant and material facts consonant with due process is ever to be contemplated, let alone pragmatically pursued.

19. Second, Gazprom seeks discovery in anticipation of preparing compulsory and permissible counterclaims against Lindsay. The reasonably contemplated counterclaims include claims for: (i) breach of contract, (ii) conversion, (iii) civil theft, (iv) breach of fiduciary duty, (v) negligent misrepresentation, (vi) unjust enrichment, (vii) fraud in the inducement, and (viii) fraud in the execution. Gazprom thus seeks discovery of documents from Lindsayca and shall seek to depose Lindsayca's corporate officers with knowledge of the Contract's execution beyond just the invoice at issue. Similarly, Gazprom shall need from Lindsayca communications pertaining to the subject invoice, as well as to multiple phases of the Plant's construction. Discovery directed at the processing of payments regarding this effort also is paramount.

20. Third, Gazprom seeks discovery in anticipation of a potential independent action against Mr. Pivert in Venezuela, or his joinder in the main Venezuelan Court proceeding. As briefly referenced, Mr. Pivert, the former General Manager of Gazprom, with apparent authority as to Gazprom, was employed by Lindsayca during part of his tenure at Gazprom. This dual employment status was act known to Gazprom at the time. It is believed that during that time Mr. Pivert, without limitation, secreted documents and resources from Gazprom for Lindsay's

benefit and unjust enrichment. There is evidence from which it may be inferred that Mr. Pivert and other current Lindsay and Lindsayca employees engaged in a systematic fraud aimed at securing personal benefits, which provided Lindsay with illicit profits, to Gazprom's material detriment. The nature and character of these claims concerning acts and omissions that were deliberately concealed and obscured further highlight the need to assist the Venezuelan Court with the benefits of discovery. Therefore, Gazprom seeks discovery of documents and deposition testimony from Lindsayca concerning Mr. Pivert's use of his apparent authority to bind Gazprom during discrete time frames, as well as more generally with respect to work order, releases, approvals, invoices and other similarly related papers that Mr. Pivert used to deprive Gazprom wrongfully of its financial resources. Mr. Pivert's role in the disbursement and transfer of funds from Gazprom's bank accounts, ostensibly for payment of materials provided and services rendered, also requires the rigors of discovery in this district, particularly because Mr. Pivert and Lindsayca are beyond the Venezuelan Court's jurisdiction.

21. Fourth, discovery is needed concerning the Contract's venue clause. Because the Venezuelan Court is currently determining whether it has jurisdiction to hear Lindsay's narrow contract claim addressing a single invoice arising from a $43 million contract, based on Gazprom's motion to dismiss in favor of an alternative venue, the Venezuelan Court would benefit from discovery on this mixed question of fact and law. Lindsay now seeks to circumvent the very venue clause that it negotiated and later ratified by signing the Contract. The primacy of the clause in relation to the parties' intent to submit contractual disputes between these parties arising out of or pertaining to the Contract to arbitration requires extraneous testimony.

Discovery is needed as to the arbitration clause and the parties' formal expressions intent in the operative pleadings and papers. Mr. Pivert and Lindsayca however, are not parties to the

Contract and the claims that would be filed against them would also fall beyond the four corners of the Contract and, therefore, outside the arbitration clause. Discovery directed to them also would help segregate potential judicial and arbitral claims and even identify parties for each action, respectively.

As more fully set forth in the memorandum in support of application for assistance to the Twelfth Court of First Instance in Civil, Commercial, Transit and Banking Matters for the Judicial District of the Metropolitan Area of Caracas, Venezuela, concurrently filed with this application, Gazprom meets the legal standard for grant of this application. This case represents a paradigmatic example where all elements of the operative legal standard for issuance of an order in support of a 28 U.S.C. §1782 petition are present and, therefore, grant of this application is both warranted and justified.

Section 1782 provides this Court with ample discretion to allow for the taking of discovery consonant with the Federal Rules of Civil Procedure to assist a foreign court or an international tribunal in its proceedings. Section 1782 in part provides:

> The district court of the district in which a *person resides or is found* may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal… The order may be made… upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Moreover, the U.S. Supreme Court in its seminal decision in *Intel Corp. v. Advance Micro Devices*, 124 S. Ct. 2466 (2004) also identified two analytical steps to be followed by district court when considering a § 1782 application. First, the district court must determine whether it has jurisdiction to grant the application. This determination involves three (3) requirements: (1) the person from whom discovery is sought has to reside or be found in the

district in which the discovery application is made; (2) the discovery at issue must be intended for use in a pending *or* contemplated proceeding before a foreign tribunal; and (3) the application must be sought by an "interested person."

There are six propositions that support and compel grant of this application.

First, Lindsayca and Mr. Pivert are found in Houston, TX within this Court's jurisdiction. (*See* Memorandum of Law, Section II a.)

Second, the two Venezuelan judicial proceedings here at issue amply satisfy the "foreign proceeding" requirement.  Section 1782 specifically provides that the discovery sought must be "for use in a proceeding in a foreign or international tribunal." *Lancaster Factoring Co. Ltd.*, 90 F.3d 38, 41 (2d Cir. 1996) ("We have interpreted this to mean a proceeding in which an adjudicative function is being exercised") (*citing In re Letters Rogatory Issued by the Director of Inspection of the Government of India*, 385 F.2d 1017, 1021 (2d Cir. 1967)).

In fact, the Fifth Circuit has upheld the grant of § 1782 assistance to a similar Venezuelan trial court.  *See*, *In re Letter Rogatory from the First Court of First Instance in Civil Matters, Caracas Venezuela*, 42 F.3d 308, 312 (5th Cir. 1995).

Third, Gazprom, as a defendant in both proceedings in Venezuela, squarely meets the "interested person" requirement.

Fourth, neither Lindsayca nor Mr. Pivert are participants in the Venezuelan proceedings. The Supreme Court in *Intel* observed that: "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 124 S. Ct. at 2483.  Such is the case here.

Fifth, the nature of the Venezuelan Court proceeding supports the discovery sought. The discovery that is the subject matter of this application comports directly and reasonably with the subject matter of the proceedings before the court in Venezuela. All of the information sought pertains or relates to the Contract and its performance during a very discrete time frame.

Sixth, and finally, the application before this Court does not seek to circumvent Venezuelan proof-gathering restrictions, nor is it unduly burdensome. It merits highlighting that none of the discovery elicited pertains to non-discoverable subject-matter categories falling within the purview of privileged or protected information. In this same vein, the discovery sought does not touch or concern any matter within the ambit of secrecy or privacy legislation. It similarly does not seek the production of documents or information the disclosure of which would cause or trigger the violation of Venezuelan public policy.

## VI.   CONCLUSION

WHEREFORE, for the foregoing reasons, Gazprom respectfully requests that the Court grant its Application for an Order requiring:

(1) Jean-Marc Pivert to appear for a videotaped deposition within thirty (30) days of the entry of an order granting this application;

(2) Jean-Marc Pivert to produce to counsel for Gazprom all documents in his possession, custody and control that pertain, relate to, or mention the Contract, including but not limited to the Contract's formation, execution, breach, and performance, as well as approvals, inspections, modifications, certifications, disbursements, invoices, and payments pursuant to the Contract, and Mr. Pivert's use of his apparent authority to bind Gazprom within thirty (30) days of the entry of an order granting this application;

(3) Lindsayca, Inc. to produce, for a videotaped deposition its most knowledgeable corporate representative with knowledge of the Contract, including but not limited to the Contract's formation, execution, breach, and performance, as well as approvals, inspections, modifications, certifications, disbursements, invoices, and payments pursuant to the Contract, and Mr. Pivert's use of his apparent authority to bind Gazprom, within thirty (30) days of the entry of an order granting this application;

(4) Lindsayca Inc. to produce to counsel for Gazprom: (a) all documents in its possession, custody and control that pertain or relate to the Contract, including but not limited to the Contract's formation, execution, breach, and performance, as well as approvals, inspections, modifications, certifications, disbursements, invoices, and payments pursuant to the Contract; and (b) all communications pertaining to the subject invoice and the multiple phases of the construction of the Plant, within thirty (30) days of the entry of an order granting this application.

A proposed order is attached hereto as **Exhibit D.**

Dated: May 9, 2014   Respectfully submitted,

**BRYAN CAVE LLP**

   */s/ Keith M. Aurzada*
Keith M. Aurzada
   Attorney-in-charge
   Texas Bar No. 24009880
   Southern District Bar No. 24728
James C. Bookhout
   Texas Bar No. 24087187
   Southern District Bar No. 2254975
2200 Ross Avenue, Suite 3300
Dallas, TX  75201
Telephone:  214.721.8000
Facsimile:  214.721.8100
Email: keith.aurzada@bryancave.com
          james.bookhout@bryancave.com

**ATTORNEYS FOR GAZPROM LATIN AMERICA SERVICIOS, C.A.**

**APPLICATION OF GAZPROM LATIN AMERICA SERVICIOS, C.A.**                                                                **PAGE 12**
**FOR ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**