Case File: AP11-M-2013-000739

PRELIMINARY POINTS

Citizen

**TWELFTH JUDGE OF FIRST INSTANCE OF THE CIVIL, COMMERCIAL AND TRAFFIC COURT OF THE JUDICIAL CIRCUIT OF THE METROPOLITAN AREA OF CARACAS**

<u>DELIVERED TO HIS OFFICE.-</u>

The undersigned, **JUAN PABLO LIVINALLI, FIDEL ALEJANDRO MONTAÑEZ, MARIANA ROUFFET and PEDRO ALEJANDRO RONDÓN,** Venezuelan citizens, of legal age, attorneys in the practice of their profession, domiciled in the city of Caracas, the holders of identification Card Numbers: 6,510,861, 10,351,767, 18,996,550, and 14,953,526, respectively, and registered in the Institute of Social Welfare of the Attorney under the numbers 47.910, 56.444, 166.182 and 197.849, also respectively, acting in their role as the legal representatives of the commercially company being sued, **GAZPROM LATIN AMERICA SERVICES, C.A.** just as it is stated in the Power of Attorney document which is already part of the case file, we appear before your competent authority in order to, in accordance with the stipulations established in Article 346 of the Civil Procedure Code, **OPPOSE A PRELIMINARY ISSUE** to the lawsuit that has been filed against the company we represent, by the company **LINDSAY, C.A.,** which we proceed to do in the following manner:

### LACK OF JURISDICTION OF THE JUDGE WITH RESPECT TO ARBITRATION

In opposition to this act we present the preliminary point contained in the first point of Article 346 of the Civil Procedure Code, relating to the <u>**LACK OF JURISDICTION OF THE JUDGE**</u>, since this lawsuit can only be filed, presided over and ruled upon by an **ARBITRATION COURT** in accordance with the stipulations established in the contract that was signed by the parties in private, on 2 March 2010, titled "*Contract for the Provision, Installation, and Construction of the Increase in the Capacity to Handle Gas*", which was submitted by the Plaintiff together with his lawsuit document, and from the execution of which directly derives the invoice which is intended to be collected.

In fact, Judge, with its lawsuit, the company **LINDSAY, C.A.** intends to judicially collect from the company that we represent, the amount of EIGHT MILLION SEVEN HUNDRED AND EIGHTY ONE THOUSAND ONE HUNDRED AND NINETY SIX BOLIVARS WITH SEVENTY FIVE CENTS (Bs. 8,781,196.75) on account of an alleged unpaid commercial invoice dated 4 March 2011, allegedly accepted by the company that we represent and identified with number 011904, but as will be shown later on, the invoice in question was issued based on the aforementioned titled "*Contract for the Provision, Installation, and Construction of the Increase in the Capacity to Handle Gas*", entered into between the parties, and thus we must state right from this point that the real intention of the Plaintiff in this trial is the compliance of a contractual

payment obligation, even if said payment was made and is documented through the issue of the corresponding commercial invoice.

The aforementioned was expressly acknowledged by the Plaintiff in its lawsuit document, which very precisely describes the source of the alleged obligation of payment, stating the following:

> "The company that I represent, LINDSAY, C.A. is the holder and owner of the invoice that it issued on behalf of the Commercial Corporation GAZPROM LATIN AMERICA SERVICIOS, C.A., on 4 March 2011, invoice No. 011904, in the amount of TWENTY TWO MILLION ONE HUNDRED AND TWO THOUSAND FOUR HUNDRED AND SEVENTY NINE BOLIVARS WITH SEVENTY FIVE CENTS (Bs. 22,102,469.75); which was duly received and accepted by GAZPROM LATIN AMERICA SERVICIOS, C.A., and which subsequently made three (3) payments to the company that I represent… **_Said invoice derived from a services contract titled JUSEPIN 120 – CONTRACT FOR THE PROCUREMENT, INSTALLATION AND CONSTRUCTION OF THE INCREASE IN THE CAPACITY TO HANDLE GAS IN THE FIELD OF JUSEPIN (EP-JUS-2) FURRIAL DISTRICT, MATURÍN, IN THE STATE OF MONAGAS, and which was executed in its entirety by the company that I represent, and to the satisfaction of the defendant._** just as it is derived from the certificate of mechanical delivery dated 15 September, provisional certificate of receipt from the construction and/or service, dated 13 June 2011, and the management report from Jusepin 120, documents mentioned above which are attached to this lawsuit and are labeled "C – file consisting of 35 folios), C-1, C-2 and C-3 (file consisting of 11 folios"). The highlighting and bold is ours.

Furthermore, the text of Invoice 011904 itself, whose collection is the intent of this trial, when describing the works that were allegedly executed by the Claimant, lists a series of construction projects, with technical and engineering aspects, and then concludes by saying that the construction constitutes **"A SUM TOTAL OF 100% OF THE WORKS ON THE JUSEPIN 120 CONTRACT FOR THE PROCUREMENT, INSTALLATION AND CONSTRUCTION OF THE INCREASE IN THE GAS HANDLING CAPACITY",** thereby clarifying the true nature of the objectives on the part of the Claimant, which is simply the compliance of a contractual obligation of payment which the company that we represent would have contracted, together with the Claimant, on 2 March 2010, in the aforementioned "Contract for the Procurement, Installation and Construction of the Increase in the Gas-Handling Capacity", in Jusepin field in the State of Monagas.

The Claimant also declares in its lawsuit that after deducting some payments made by the company that we represent, on account of the invoice mentioned above, the balance due would be EIGHT MILLION SEVEN HUNDRED AND EIGHTY ONE THOUSAND AND NINETY SIX BOLIVARS WITH SEVENTY FIVE CENTS (Bs. 8,871,196.75), "which the Defendant GAZPROM LATIN AMERICA SERVICIOS S.A. has outright refused to pay to the company that I represent", which indicates

that there is a clear example of a conflict between the parties arising from the compliance with the contract in question.

So, beyond the adamant insistence by the Plaintiff about the alleged existence of a "commercial relationship" between itself and the company that we represent, and the false "commercial nature" of the judicial action which it has fought about, it is more than evident that what we have here is a conflict arising between the parties derived from a contractual relationship of a civil nature, with respect to which, we must stress, the company that we represent has strong arguments in its defense and for the exercise of its rights.

However, Judge, neither the intention deduced from the plaintiff nor the defenses that the company that we represent may present against said claims, they cannot be presented or decided in this courtroom , nor by anybody of the Venezuelan judiciary, because by virtue of what was expressly stipulated between the parties, with respect to the contract from which this conflict has developed, **SAID CONTRACT CAN ONLY BE RESOLVED THROUGH A PROCESS OF ARBITRATION.**

In fact, Clause Twenty Three of the "*Contract for the Provision, Installation, and Construction of the Increase in the Capacity to Handle Gas",* that was signed between the parties on 2 March 2010 (and which was filed together with the lawsuit document by the Plaintiff, labeled as Appendix "C", constitutes an ARBITRATION AGREEMENT OR A COMMITMENT CLAUSE, through which it was agreed that any conflict which may arise between the parties as a result of the contract in question, would be resolved through a Commercial, Institutional Arbitration such as those described in Article 11 of the Commercial Law of Arbitration.

The arbitration agreement in question, contained in Clause 23 of the contract, sets forth the following:

> "CLAUSE 23 – DISPUTE RESOLUTION
>
> *In the event of disputes arising from the execution or interpretation of this CONTRACT,  the  PARTIES  shall  make  every effort to achieve an amicable solution of their         differences. If an agreement is not achieved between the REPRESENTATIVE of the  CONTRACTOR and the REPRESENTATIVE of the COMPANY, with a period of thirty (30)          DAYS, the dispute shall be referred by the FIRST PARTY to the highest level of general    authority   of the SECOND PARTY, for consideration and resolution.*
>
> *If the dispute is not resolved at this level, then the PARTIES may resort to the following  procedure:*
>
> ***Conflict Resolution and Arbitration: Any dispute that arises in relation to this CONTRACT, shall be resolved through legal arbitration, in***



> *compliance with the Bolivarian Republic of Venezuela, in Caracas, in the headquarters of the Business Center for Conciliation and Arbitration (CEDCA), in three areas, which may issue interim measures, even before the Arbitral Tribunal is formed, which will rule on the substance of the dispute. The arbitral award shall be based on, and shall be the subject of the prior presentation of, the provisions of this Regulation. The summons to respond to the arbitration request shall be sent to the address of the defendant set forth in this CONTRACT.*
>
> *The PARTIES also agree that the information arising from the abovementioned procedure shall be confidential and shall be handled in accordance with the provisions of Clause 21 (CONFIDENTIALITY) of this CONTRACT"* (our own highlighting and underlining of text).

As can be observed, the contracting parties were perfectly clear in the choice of arbitration as the only means for resolving any conflict that arose between them as a result of the contract signed between them on the record, and this – as mentioned above – undoubtedly represents an arbitration agreement pursuant to the provisions of Article 5 of the abovementioned Commercial Arbitration Law, which describes this as *"an agreement whereby the parties decide to refer to arbitration all and any disputes that have arisen or may arise between them concerning a contractual or non-contractual legal relationship,"* adding that said agreement can consist in a clause included in a contract, as is the case in question. Therefore, it is absolutely clear that through the abovementioned agreement, the parties in this judgment were expressly obliged to refer their disputes to the decision of arbiters and waived the right to pursue their claims before the judges, as Article 5 of the law also sets forth that this agreement is exclusive and excludes ordinary jurisdiction.

It is also important to note that the arbitration agreement contained in the contract signed between the parties on the record – which directly lays down the payment obligation, the compliance of which is being requested through the demand – is not only recorded in writing, as required pursuant to Article 6 of the Commercial Arbitration Law, but it is also perfectly clear and unambiguous concerning the will of the parties to refer any dispute that may arise between them based on the contract to the decision of an arbitral tribunal, thus complying with the case-law requirement stipulating that the Arbitration Clause must not merely be a generic, vague or incomplete statement. It is also clear that our client has not expressly or implicitly waived the agreed arbitration agreement, because in said agreement – the first action taken after being summoned to the court – the lack of jurisdiction of this court is specifically invoked regarding the arbitration.

There are numerous decisions from the Supreme Court of Justice stating the Lack of Jurisdiction of the judge concerning Arbitration, for cases identical to that in question, and therefore we shall focus on just one of the recent rulings in this sense. Ruling No 910 of July



31, 2013, handed down by the Political Administrative Chamber of the Supreme Court of Justice and presented by the magistrate Dr. Mónica Misticchio Tortorella, set forth the following:

> *"The legal theory and case law have considered the arbitration as a means of procedural heterocomposition between the parties, which through their express will have agreed in advance to transfer the hearing, to the Judiciary (this agreement can also be made at a later date, i.e. after commencing a court case), of the differences, disputes and rifts that may arise between them from the execution, implementation, interpretation or termination of a legal transaction (See – rulings of this Chamber Numbers 00504 and 00706 of May 28 and June 26, 2013, respectively).*
>
> *That said, the Chamber observes that the defendant argued that the lack of jurisprudence based on the provisions of Clause 20 of the service contract (pages 37 to 63 of the file) entered into with the claimant trading company, the content of which reads as follows: "(…) The parties hereby declare their will to resolve any dispute that arises from this contract through Legal Arbitration, and shall be governed in accordance with the rules laid down in the Commercial Arbitration Law (…),"  and as legal grounds for this defense, stated the provisions of Article 5 of the Commercial Arbitration Law, published in the Official Gazette of Venezuela, No 36,430 of April 7, 1998, which sets forth:*
>
>> ***"The 'arbitration agreement' is an agreement whereby the parties decide to refer to arbitration all and any disputes that have arisen or may arise between them concerning a contractual or non-contractual legal relationship. The arbitration agreement may involve a clause inserted in a contract, or be an independent agreement."***
>>
>> ***By virtue of the arbitration agreement the parties are required to refer their disputes to the decision of arbiters and waive the right to pursue their claims before the judges. The arbitration agreement is exclusive and excludes ordinary jurisdiction"***. *(Highlighting added by the Chamber)*
>
> *In addition, the first part of Article 6 of the Commercial Arbitration Law provides that: "The arbitration agreement shall be recorded in writing in any document or set of documents that records the intent of the parties to submit to arbitration (…)."*
>
> *Accordingly, the Constitutional Division of this Supreme Court, in Decision No. 1067 of November 3, 2010, held with regard to the relations of coordination and supplementarity of the agencies of the Judicial Branch with the arbitration system, that the agencies and the Judicial Branch can only make a "prima facie," formal, limitary or summary examination or verification of the requirements of validity, effectiveness and applicability of the arbitration clause, which must be limited to verifying the written nature of the arbitration agreement, and shall be precluded from conducting any analysis related to any defects in consent that might exist in connection with the written document.*
>
> *Similarly, it was held by the aforementioned Constitutional Division institution that to determine the appropriateness of the so-called "Tacit Waiver of Arbitration," the behavior of the parties in the process demonstrating an undeniable "orientation" toward submitting to arbitration as a means for resolving the dispute must be studied in each case.*

> *Based on the foregoing reasoning, this Court feels it is necessary to determine whether the service contract signed between the parties, under which the alleged invoices whose collection being sought were issued, authenticated in Notary Office Five of the Municipality of the Capital District and the Bolivarian State of Miranda, under No. 19, Volume 42, on March 4, 2011, shows the unequivocal, unquestionable and non-fraudulent intent to submit any disputes that arise from such agreement to resolution by arbitration. For the purposes thereof, it is noted that in Clause Twenty of the aforementioned contract, it is provided that:*
>
> *"TWENTY: Arbitration:*
>
> *The parties declare their intent to resolve any and all disputes that arise in connection with this contract to Arbitration according to Law, which shall be governed by the rules established in the Commercial Arbitration Law with regard to Institutional Arbitration. The place of Arbitration shall be the city of Caracas and the proceeding shall be governed by the rules established by the Venezuela-American Chamber (Venamcham). The arbitration shall be conducted and decided by three (3) arbitrators ruling according to law, appointed by mutual agreement between the parties. In the event of a disagreement in the selection of the arbitrators, the SUPPLIER shall be entitled to select one (1), and PEPSICO shall select one (1), and the two (2) appointed by the parties shall select the third, and in the event of the disagreement between them, the third arbitrator shall be appointed by the Chamber of Commerce of Caracas (…). The parties agree to comply with any arbitral decision or award that is issued, and agree that there shall be no appeal of such arbitral decision, except the appeal for nullification provided for in the Commercial Arbitration Law" (sic). (Emphasis in the original).*
>
> *It can be said with certainty that, from the content of this clause, it can be seen that the parties, exercising the principal freedom of contract established in Article 1159 of the Civil Code, agreed to submit any disputes that might arise between them to decision by an arbitral tribunal, and it cannot be argued, based on the foregoing clause, that there was a general, imprecise or incomplete statement …*
>
> *For the reasons stated, this Court declares that the Judicial Branch does not have jurisdiction in view of the arbitration agreement, and, consequently, confirms the decision appealed, issued by the First Civil, Commercial and Transit Court of Original Jurisdiction of the Judicial District of the Metropolitan Area of Caracas, on April 9, 2013. So declared."*

It is undeniable, Your Honor, that we have before us a situation identical to that ruled on in the above-transcribed decision, since the parties in this case, in the full exercise of the principle of freedom of contract, also decided that any dispute that arose between them related to the performance of the *"Contract for the Procurement, Installation and Construction of the Increase of Gas Handling Capacity"* must be resolved by institutional arbitration, conducted at the facilities of the Business Conciliation and Arbitration Center (CEDCA), in accordance with the rules specified in the arbitration clause and the internal rules of such Arbitration Center.

Therefore, we respectfully request to this court that it consider and rule on the preliminary issue raised herein in accordance with the provisions of Article 349 of the Code of Civil Procedure, and

hold that it is Valid, and, therefore, declare the lack of jurisdiction of this court in view of the arbitration agreement.

**SPECIAL REQUEST NOT TO RULE ON THE PRELIMINARY PREVENTIVE MEASURE REQUESTED**

We respectfully request that this court, in view of this assertion of its lack of jurisdiction and the serious legal implications that it would have, REFRAIN FROM RULING on the request made by the plaintiff for a preliminary preventive measure be decreed ordering the attachment of personal property owned by our principal. Such measure – in the event that it is decreed – would be absolutely illegal and unconstitutional, since the Venezuelan Judicial Branch lacks jurisdiction to hear and decide the matter put before it, and that the power to issue preliminary preventive measures in disputes related to the contract signed by the parties has been expressly transferred by them to the arbitrators who will be appointed in accordance with the provisions of the Arbitration Agreement on file in this case; but, in addition, a judicial measure that is decreed in practice with regard to property owned by the company **GAZPROM LATIN AMERICA SERVICIOS, C.A.,** could cause enormous and irreparable harm to such company, certainly affecting its operations and seriously jeopardizing the service that it provides to the Republic in a matter of absolute public interest, which is the work that it performs and that – as can be seen in the contract contained in the record – is related directly to the exploration and exploitation of hydrocarbons.

**PROCEDURAL DOMICILE**

In accordance with the provisions of Article 174 of the Code Civil Procedure, we designate the following address as our client's Procedural Domicile: the Law Firm of KLMC Legal: Avenida Francisco de Miranda, Banco del Orinoco Tower, 7th Floor, Suite 7-B. La Floresta. Caracas. Telephone: 0212-2831230.

**PRAYER FOR RELIEF**

Based on the foregoing, we raise against the lawsuit the preliminary issue contemplated in Section 1 of Article 346 of the Code of Civil Procedure, pertaining to the Court's Lack of Jurisdiction, and pray that it be declared to be Valid and that this case be dismissed, with any other pronouncements required by law.

In Caracas on the date of filing.



**Expediente: AP11-M-2013-000739**<br>**PROMOCIÓN DE CUESTIONES PREVIAS**

Ciudadano
**JUEZ DUODÉCIMO DE PRIMERA INSTANCIA EN LO CIVIL, MERCANTIL Y DEL TRÁNSITO DE LA CIRCUNSCRIPCIÓN JUDICIAL DEL ÁREA METROPOLITANA DE CARACAS**
<u>SU DESPACHO</u>.-

Nosotros, **JUAN PABLO LIVINALLI**, **FIDEL ALEJANDRO MONTAÑEZ**, **MARIANA ROUFFET** y **PEDRO ALEJANDRO RONDÓN**, venezolanos, mayores de edad, abogados en ejercicio, domiciliados en la ciudad de Caracas, titulares de las cédula de identidad números 6.510.861, 10.351.767, 18.996.550 y 14.953.526 respectivamente e inscritos en el Instituto de Previsión Social del Abogado bajo los números 47.910, 56.444, 166.182 y 197.849, también respectivamente, actuando con el carácter de apoderados judiciales de la sociedad mercantil demandada **GAZPROM LATIN AMERICA SERVICIOS, C.A.**, tal como consta del instrumento poder que ya cursa en autos, ocurrimos ante su competente autoridad para, de conformidad con lo previsto en el artículo 346 del Código de Procedimiento Civil, **OPONER UNA CUESTIÓN PREVIA** a la demanda interpuesta contra nuestra representada por la empresa **LINDSAY, C.A.**, lo cual hacemos en los términos siguientes:

### FALTA DE JURISDICCIÓN DEL JUEZ FRENTE AL ARBITRAJE

Se opone en este acto la cuestión previa contenida en el ordinal 1ro. del artículo 346 del Código de Procedimiento Civil, relativa a la <u>**FALTA DE JURISDICCIÓN DEL JUEZ**</u>, toda vez que la presente demanda sólo puede ser planteada, conocida y decidida por un **TRIBUNAL ARBITRAL** de conformidad con lo acordado por las partes en el contrato que suscribieron privadamente en fecha 2 de marzo de 2010, denominado *"Contrato de Procura, Instalación y Construcción del Incremento de la Capacidad del Manejo de Gas"*, que fue consignado por la parte accionante junto con su libelo de demanda, y de cuya ejecución deriva directamente la factura cuyo cobro se pretende.

En efecto ciudadano juez, con su demanda la empresa **LINDSAY, C.A.** pretende cobrar judicialmente a nuestra mandante la cantidad de OCHO MILLONES SETECIENTOS OCHENTA Y UN MIL CIENTO NOVENTA Y SEIS BOLÍVARES CON SETENTA Y CINCO CÉNTIMOS (Bs. 8.781.196,75) por concepto del supuesto saldo deudor de una factura mercantil de fecha 4 de marzo de 2011, presuntamente aceptada por nuestra mandante e identificada con el número 011904; pero es el caso que -tal como se verá a continuación- la factura en cuestión fue emitida con ocasión del señalado *"Contrato de Procura, Instalación y Construcción"* suscrito entre las partes, por lo que desde ya debemos afirmar que la verdadera pretensión

de la demandante en este juicio es el cumplimiento de una obligación contractual de pago, aunque la misma haya sido documentada mediante la emisión de una factura mercantil.

Lo anteriormente expuesto fue expresamente reconocido por la propia demandante en su libelo, en el que describe con mucha precisión la procedencia de la supuesta obligación de pago, señalando lo siguiente:

> *"Mi representada LINDSAY, C.A. es portadora y titular de la factura que emitió a la Sociedad Mercantil GAZPROM LATIN AMERICA SERVICIOS, C.A. ... en fecha 04 de Marzo de 2011, la factura No. 011904, por la cantidad de VEINTIDÓS MILLONES CIENTO DOS MIL CUATROCIENTOS SESENTA Y NUEVE BOLÍVARES CON SETENTA Y CINCO CÉNTIMOS (Bs. 22.102.469,75); la cual fue debidamente recibida y aceptada por la empresa GAZPROM LATIN AMERICA SERVICIOS, C.A.; de la cual se le realizó a mi representada tres (3) abonos por parte de la demandada... **Dicha factura derivó de un contrato de servicios denominado JUSEPIN 120 - CONTRATO DE PROCURA, INSTALACIÓN Y CONSTRUCCIÓN DEL INCREMENTO DE LA CAPACIDAD DEL MANEJO DE GAS EN EL CAMPO JUSEPIN (EP-JUS-2) DISTRITO FURRIAL, MATURÍN ESTADO MONAGAS, el cual fue ejecutado por mi representada en su totalidad y a satisfacción de la empresa demandada**, tal y como se desprende de acta de entrega mecánica de fecha 15 de septiembre, acta de recepción provisional de la obra y/o servicio, de fecha 13 de junio de 2011, e informe de gestión Jusepin 120, documentales antes mencionada que acompaño al presente libelo marcadas "C (legajo constante de 35 folios), C-1, C-2 y C-3 (legajo constante de 11 folios)"* (resaltado y subrayado nuestro).

Más aún, el texto de la propia factura No. 011904, cuyo cobro es el objeto del presente juicio, al describir los trabajos supuestamente ejecutados por la demandante, enumera una serie de obras y conceptos técnicos de ingeniería, concluyendo que tales obras constituyen ***"UN TOTAL ACUMULADO DEL 100%, DE TRABAJOS EN JUSEPIN 120 CONTRATO DE PROCURA, INSTALACIÓN Y CONSTRUCCIÓN DEL INCREMENTO DE LA CAPACIDAD DEL MANEJO DE GAS"***, aclarándose así la verdadera naturaleza de la pretensión de la parte demandante, que no es otra sino el cumplimiento de la obligación de pago que habría contraído nuestra representada al suscribir junto a la demandante, en fecha 2 de marzo de 2010, el mencionado "Contrato de Procura, Instalación y Construcción del Incremento de la Capacidad del Manejo de Gas" en el campo Jusepin del Estado Monagas.

También afirma la empresa demandante en su libelo que luego de deducir unos abonos hechos por nuestra representada a cuenta de la factura señalada, quedaría un supuesto saldo deudor de OCHO MILLONES SETECIENTOS OCHENTA Y UN MIL CIENTO NOVENTA Y SEIS BOLÍVARES CON SETENTA Y CINCO CÉNTIMOS (Bs. 8.781.196,75), *"la cual se ha negado rotundamente la empresa accionada Sociedad Mercantil GAZPROM LATIN AMERICA SERVICIOS, C.A. pagar a mi representada"*, lo cual evidencia la existencia de un claro

conflicto entre las partes contratantes con ocasión del cumplimiento del contrato en cuestión.

De manera que más allá de la ferviente insistencia de la empresa demandante sobre la supuesta existencia de una *"relación comercial"* entre ella y nuestra representada, y la falsa *"naturaleza mercantil"* de la acción judicial por ella ejercida, es más que evidente que lo aquí planteado en un conflicto surgido entre partes con ocasión en una relación contractual de naturaleza civil, respecto del cual -debemos resaltarlo- nuestra representada tiene importantes argumentos y alegatos de defensa, tanto de hecho como de derecho, que serán oportunamente ejercidos.

Sin embargo ciudadano juez, ni la pretensión deducida por la accionante ni las defensas que posee nuestra representada en contra de dicha pretensión, pueden ser planteadas ni decididas en el presente juicio, ni por órgano alguno del Poder Judicial venezolano, pues por virtud de una estipulación expresa que las partes incluyeron en el contrato respecto de cuyo cumplimiento ha surgido el señalado conflicto, **EL MISMO SÓLO PUEDE SER PLANTEADO Y RESUELTO ACUDIENDO A UN PROCEDIMIENTO DE ARBITRAJE**.

Efectivamente, la Cláusula Vigésima Tercera del *"Contrato de Procura, Instalación y Construcción del Incremento de la Capacidad del Manejo de Gas"* suscrito entre las partes en fecha 2 de marzo de 2010 (y que fuera consignado junto al libelo de la demanda por la propia empresa demandante, marcado como Anexo "C") constituye un <u>Acuerdo de Arbitraje o Cláusula Compromisoria</u>, mediante la cual se pactó que cualquier conflicto que surgiera entre las partes con ocasión del contrato en cuestión, sería resuelto mediante un Arbitraje Comercial Institucional de los descritos en el artículo 11 y siguientes de la Ley de Arbitraje Comercial.

El acuerdo de arbitraje en cuestión, contenido en la cláusula 23 del contrato, establece lo siguiente:

> *"CLÁUSULA 23 – RESOLUCIÓN DE CONTROVERSIAS*
>
> *En caso de controversias que surjan de la ejecución o interpretación del presente CONTRATO, las PARTES harán sus mejores esfuerzos para lograr una solución amigable de sus diferencias. En caso de no lograrse acuerdo entre el REPRESENTANTE de la CONTRATISTA y el REPRESENTANTE de la COMPAÑÍA, dentro de un lapso de treinta (30) DÍAS la controversia será sometida por una PARTE al máximo nivel de autoridad General de la otra PARTE, para su consideración y resolución.*
>
> *En caso de no solventarse la controversia a este nivel, entonces las PARTES podrán acudir al procedimiento siguiente:*
>
> <u>*Solución de Conflictos y Arbitraje: Cualquier controversia que se suscite en relación con el presente CONTRATO, será resuelta mediante arbitraje de derecho, de*</u>

> ***conformidad con las leyes de la República Bolivariana de Venezuela, en Caracas, en la sede del Centro Empresarial de Conciliación y Arbitraje (CEDCA), por tres ámbitos, los cuales podrán dictar medidas cautelares, inclusive antes de que quede constituido el Tribunal Arbitral que conocerá el fondo de la controversia. El laudo arbitral será motivado y será objeto de la presentación previa prevista en dicho Reglamento. La citación para la contestación de la demanda de arbitraje se realizará en la dirección de la parte demandada indicada en este CONTRATO.***
>
> *Así mismo, las PARTES convienen en que la información resultante o generada en el procedimiento descrito en el Numeral anterior, tendrá carácter confidencial y se tratara de conformidad con lo establecido en la Cláusula 21 (CONFIDENCIALIDAD) del presente CONTRATO"* (resaltado y subrayado nuestro).

Como puede observarse, las partes contratantes fueron absolutamente claras en la elección del arbitraje como único medio de solución de cualquier conflicto que surgiera entre ellas con ocasión del contrato consignado en autos, y ello -como se dijo- constituye sin lugar a dudas un acuerdo de arbitraje a tenor de lo previsto en el artículo 5 de la señala Ley de Arbitraje Comercial, que lo describe como *"un acuerdo por el cual las partes deciden someter a arbitraje todas o algunas de las controversias que hayan surgido o puedan surgir entre ellas respecto de una relación jurídica contractual o no contractual"*, añadiendo que dicho acuerdo puede consistir en una cláusula incluida en un contrato, como en el caso que nos ocupa. Queda así muy claro que mediante el señalado acuerdo las partes de este juicio se obligaron expresamente a someter sus controversias a la decisión de árbitros y renunciaron a hacer valer sus pretensiones ante los jueces, pues como lo consagra el mismo artículo 5 de la ley, dicho acuerdo es exclusivo y excluyente de la jurisdicción ordinaria.

También es importante destacar que el acuerdo de arbitraje contenido en el contrato consignado en autos -del cual deriva directamente la obligación de pago cuyo cumplimiento se exige con la demanda- no sólo consta por escrito, como lo ordena el artículo 6 de la Ley de Arbitraje Comercial, sino que además es supremamente claro e inequívoco respecto de la voluntad de las partes de someter cualquier controversia que pudiese surgir entre ellas con ocasión del contrato, a la decisión de un tribunal arbitral, cumpliéndose así la exigencia jurisprudencial relativa a que la Cláusula Compromisoria no sea una manifestación genérica, imprecisa o incompleta. También resulta obvio que nuestra representada no ha renunciada expresa ni tácitamente al acuerdo de arbitraje pactado, pues en ésta -la primera actuación que se realiza después de hacer quedado citada en el juicio- se invoca precisamente la falta de jurisdicción de este tribunal frente al arbitraje.

Son innumerables las decisiones del Tribunal Supremo de Justicia declarando la Falta de Jurisdicción del juez frente al Arbitraje, en casos idénticos al que nos ocupa, por lo que nos limitaremos a invocar sólo una de las recientes sentencias dictadas en ese sentido. Así, la sentencia Nro. 910 de fecha 31 de julio de 2013, dictada por la Sala Político Administrativa

del Tribunal Supremo de Justica con ponencia de la magistrada Dra. Mónica Misticchio Tortorella, estableció lo siguiente:

> *"La doctrina y la jurisprudencia han considerado al arbitraje como un medio de heterocomposición procesal entre las partes, quienes mediante su voluntad expresa convienen de forma anticipada, en sustraer del conocimiento del Poder Judicial (acuerdo este que también podría ser posterior, esto es, ya iniciada una causa judicial), las diferencias, controversias o desavenencias que puedan surgir entre ellas por la ejecución, desarrollo, interpretación o terminación de un negocio jurídico (Vid. sentencias de esta Sala Nos. 00504 y 00706 de fechas 28 de mayo y 26 de junio de 2013, respectivamente).*
>
> *Precisado lo anterior, observa la Sala que la parte accionada alegó la falta de jurisdicción en razón de lo previsto en la cláusula vigésima del contrato de servicios (folios 37 al 63 del expediente) suscrito con la sociedad mercantil demandante, cuyo contenido es el siguiente: "(…) Las partes declaran su voluntad de resolver todas y cada una de las controversias que surjan con relación a este contrato, mediante Arbitraje de Derecho, y se regulará conforme a las normas que dispone la Ley de Arbitraje Comercial (…)" y como sustento jurídico de dicha defensa señaló lo previsto en el artículo 5 de la Ley de Arbitraje Comercial, publicada en la Gaceta Oficial de Venezuela Nº 36.430 del 7 de abril de 1998, que dispone:*
>
>> ***"El `acuerdo de arbitraje´ es un acuerdo por el cual las partes deciden someter a arbitraje todas o algunas de las controversias que hayan surgido o puedan surgir entre ellas respecto de una relación jurídica contractual o no contractual. El acuerdo de arbitraje puede consistir en una cláusula incluida en un contrato, o en un acuerdo independiente.***
>>
>> ***En virtud del acuerdo de arbitraje las partes se obligan a someter sus controversias a la decisión de árbitros y renuncian a hacer valer sus pretensiones ante los jueces. El acuerdo de arbitraje es exclusivo y excluyente de la jurisdicción ordinaria"***. *(Destacado de la Sala)*
>
> *Asimismo, dispone la primera parte del artículo 6 de la Ley de Arbitraje Comercial que: "El acuerdo de arbitraje deberá constar por escrito en cualquier documento o conjunto de documentos que dejen constancia de la voluntad de las partes de someterse a arbitraje (…)".*
>
> *En este sentido, la Sala Constitucional de este Tribunal Supremo de Justicia, mediante sentencia Nº 1067 del 3 de noviembre de 2010, precisó en cuanto a las relaciones de coordinación y subsidiaridad de los órganos del Poder Judicial frente al sistema de arbitraje, que los órganos del Poder Judicial sólo pueden realizar un examen o verificación "prima facie", formal, preliminar o sumario de los requisitos de validez, eficacia y aplicabilidad de la cláusula arbitral, el cual debe limitarse a la constatación del carácter escrito del acuerdo de arbitraje quedando excluido cualquier análisis relacionado con los vicios del consentimiento que puedan derivarse de la cláusula por escrito.*
>
> *De igual forma, ha dejado sentado la aludida Sala Constitucional en su sentencia que para determinar la procedencia de la denominada "Renuncia Tácita al Arbitraje", en cada caso debe estudiarse, el comportamiento desarrollado por las partes en el proceso que demuestre una indiscutible "orientación" de someterse al arbitraje como medio de resolución del conflicto.*
>
> *Con fundamento en los anteriores razonamientos, esta Sala considera necesario determinar si del contrato de servicios suscrito entre las partes, por el cual se*

> *encuentran causadas las pretendidas facturas cuyo cobro se demanda, autenticado ante la Notaría Pública Quinta del Municipio Chacao del Distrito Capital y Estado Bolivariano de Miranda, bajo el N° 19, Tomo 42, en fecha 4 de marzo de 2011, se desprende la intención de someterse en forma inequívoca, indiscutible y no fraudulenta, a resolver por vía de arbitraje las divergencias que se presentaren como consecuencia de dicha convención. A tal fin, se observa que en la cláusula vigésima del mencionado contrato se estableció:*
>
>> *"VIGESIMA: Arbitraje:*
>>
>> *Las partes declaran su voluntad de resolver todas y cada una de las controversias que surjan con relación a este contrato, mediante Arbitraje de Derecho, y se regulará conforme a las normas que dispone la Ley de Arbitraje Comercial en materia de Arbitraje Institucional. El lugar de Arbitraje será la ciudad de Caracas y el procedimiento se regirá de conformidad a las reglas establecidas por la Cámara Venezolana Americana (Venamcham). El Arbitraje será sustanciado y decidido por tres (3) árbitros de derecho nombrados de mutuo acuerdo entre las partes. En caso de desacuerdo en la elección de los árbitros, EL PROVEEDOR le corresponderá elegir a uno (1), y PEPSICO elegirá a uno (1), y los dos (2) árbitros nombrados por las partes elegirán al tercero, y en caso de desacuerdo de éstos, el tercer arbitro lo designará la Cámara de Comercio de Caracas (…). Las partes se obligan a cumplir el fallo o laudo arbitral que se dicte, y aceptan que contra dicha decisión arbitral no habrá recurso alguno, salvo el recurso de nulidad previsto en la Ley de Arbitraje Comercial" (sic). (Destacado del original).*
>
> *Ciertamente, del contenido de la cláusula transcrita se aprecia que los contratantes, en ejercicio del principio de la autonomía de la voluntad consagrado en el artículo 1.159 del Código Civil, acordaron someter las controversias que pudiesen surgir entre ellas a la decisión de un tribunal arbitral, sin que de la referida cláusula pueda colegirse una manifestación genérica, imprecisa o incompleta. …*
>
> *En virtud de las motivaciones expresadas esta Sala declara que el Poder Judicial no tiene jurisdicción frente al arbitraje y, en consecuencia, confirma el fallo consultado dictado por el Juzgado Primero de Primera Instancia en lo Civil, Mercantil y Tránsito de la Circunscripción Judicial del Área Metropolitana de Caracas, el 9 de abril de 2013. Así se declara".*

Es innegable ciudadano juez que nos encontramos en una situación idéntica a la resuelta en la sentencia antes transcrita, pues también en el presente caso las partes, en ejercicio pleno del principio de la autonomía de la voluntad contractual, decidieron que cualquier controversia que surgiera entre ellas en ejecución del *"Contrato de Procura, Instalación y Construcción del Incremento de la Capacidad del Manejo de Gas"* debe ser resuelto mediante un arbitraje institucional, tramitado en la sede del Centro Empresarial de Conciliación y Arbitraje (CEDCA), de acuerdo a las reglas especificadas en la cláusula compromisoria y en las normas del reglamento interno de dicho Centro de Arbitraje.

Por lo expuesto solicitamos respetuosamente a este tribunal que tramite la cuestión previa aquí opuesta conforme lo establece el artículo 349 del Código de Procedimiento Civil y que

la misma sea declarada Con Lugar, declarándose en consecuencia, la falta de jurisdicción de este tribunal frente al arbitraje.

### PETICIÓN ESPECIAL DE NO PROVEER SOBRE LA CAUTELA SOLICITADA

Solicitamos muy respetuosamente a este tribunal que en atención a la presente denuncia de su falta de jurisdicción y a las graves implicaciones legales que ello tiene, SE ABSTENGA DE PROVEER sobre la solicitud hecha por la parte demandante para que se decrete una medida provisional de embargo sobre bienes muebles propiedad de nuestra representada. Dicha medida -en el supuesto de que sea decretada- sería absolutamente ilegal e inconstitucional (dado que el Poder Judicial venezolano carece de jurisdicción para atender y decidir el asunto que le ha sido planteado, y que la facultad cautelar para conflictos relacionados con el contrato suscrito entre las partes ha sido expresamente deferida por ellas a los árbitros que se designen, según lo previsto en el Acuerdo de Arbitraje que cursa en autos; pero además, una medida judicial que se decrete y practique sobre bienes propiedad de la empresa **GAZPROM LATIN AMERICA SERVICIOS, C.A.** podría causar enormes e irreparables daños a dicha empresa, afectando seguramente sus operaciones y poniendo en serio peligro la continuidad del servicio que ella presta a la República en un materia de absoluto interés público, como son las obras que ella ejecuta y que -como puede observarse en el contrato acompañado a los autos- se relacionan directamente con la exploración y explotación de hidrocarburos.

### DOMICILIO PROCESAL

De conformidad con lo previsto en el artículo 174 del Código de Procedimiento Civil, señalamos como Domicilio Procesal de nuestra representada, la siguiente dirección: Despacho de Abogados KLMC Legal: Avenida Francisco de Miranda, Torre Banco del Orinoco, Piso 7, oficina 7-B. La Floresta. Caracas. Teléfono: 0212-2831230.

### PETITORIO

En base a lo todo anteriormente expuesto, oponemos a la presente demanda la cuestión previa contenida en el ordinal 1ro. del artículo 346 del Código de Procedimiento Civil, relativa a la Falta de Jurisdicción del Juez, solicitando que la misma sea declara Con Lugar y extinguido en presente juicio, con el resto de los pronunciamiento de ley.

En Caracas a la fecha de su consignación.



715 S.W. 73RD AVENUE
MIAMI, FLORIDA 33144
TEL 305 373•7874 FAX 381•7874
TOLL FREE: 1 (888) 304•7874
E-MAIL: info@pretran.com

**Certificate of Accuracy**



State of Florida)
County of Miami-Dade)

**Vicente de la Vega**, certified by the Administrative Office of the United States Court and by the Court Interpreters Certification Board of the State of Florida, swears, deposes and states that the attached translation has been performed by a translator fully qualified to translate in the **SPANISH** and **ENGLISH** languages, as engaged to this effect by and on behalf of Precision Translating Services, Inc.

Sworn to and subscribed before me this Thursday, May 8, 2014 by **Vicente de la Vega**, who is personally known to me.

_____
**Vicente de la Vega**

My commission expires:

ALICIA A. MUINA
MY COMMISSION # EE 056220
EXPIRES: May 18, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public State of Florida at Large

**The utmost care has been taken to ensure the accuracy of all translations. Precision Translating Services, Inc. and its employees shall not be liable for any damages due to its own negligence or errors in typing or translation, nor shall it be liable for the negligence of third parties.**

BRYCAV-JM_140507.05_1 OF 5