IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| APPLICATION OF GAZPROM LATIN § | |
| AMERICA SERVICIOS, C.A., § | MISC. ACTION NO. 4:14-mc-1186 |
| § | |
| Applicant. § | |
| § | |

### GAZPROM LATIN AMERICA SERVICIOS, C.A.'S RESPONSE TO RESPONDENT JEAN-MARC PIVERT'S MOTION TO VACATE ORDERS

Gazprom Latin America Servicios, C.A. ("*Gazprom*") submits this response to Respondent Jean-Marc Pivert's motion to vacate and set aside the Orders issued by this Court on May 19, 2014 and August 5, 2014, and states as follows:

## I. INTRODUCTION

Well over three months since the Court entered its May 19, 2014 Order granting Gazprom's 28 U.S.C. § 1782 Application, Respondent Jean-Marc Pivert ("*Mr. Pivert*") has tardily asked the Court to relieve him from his obligation to comply. Mr. Pivert comes to the Court both late and without sufficient excuse. Having received two different opportunities to attend his deposition in response to two separate orders from the Court directing him to do so, Mr. Pivert now seeks to vacate and set aside both orders. As his sole basis, Mr. Pivert asserts that Gazprom has not satisfied the prerequisites for the issuance of a discovery order pursuant to 28 U.S.C. § 1782. (*See* Motion to Vacate).

Mr. Pivert has raised this belated challenge under the following circumstances:

- Notwithstanding Mr. Pivert's generic claim that he never received either of the Court's orders or any of Gazprom's filings, correspondence, or notices—he asserts mysteriously that he "recently … learned of" the case, but conspicuously

fails to say how—his attorney first contacted Gazprom's counsel on the very eve of Mr. Pivert's second scheduled deposition date and advised that Mr. Pivert would not appear for deposition the following day.

- This second scheduled deposition date was particularly significant because the Court had warned that, upon Mr. Pivert's failure to appear, "a warrant [may be] issued for his arrest."

- Within two hours of that telephone call, Mr. Pivert's counsel filed his Motion to Vacate, including an attached statement by Mr. Pivert that had purportedly been signed by Mr. Pivert the preceding day.

- This telephone call from Mr. Pivert's counsel came on the heels of Gazprom's counsel receiving back from Federal Express a package that had been sent to Mr. Pivert in Venezuela one month before. Although the package was purportedly returned as "undeliverable" and had not been opened in the usual manner, the presence of two staples on the side of the package indicate that it had been surreptitiously opened and then resealed.

- In his statement, Mr. Pivert admits that he used the Houston address and phone number on his business card—the same address to which Gazprom sent copies of pleadings, the Court Orders and deposition notices—to receive mail and messages, and that materials sent to him at that address were routinely forwarded to him.

Even putting aside the circumstances of Mr. Pivert's eleventh-hour filing, and the multiple notices of these proceedings that were provided to him over a period of months, his Motion to Vacate fails on substantive grounds. As discussed in more detail below, both the

Court's decision on Gazprom's 28 U.S.C. § 1782 Application and the Court's August 5, 2014 Order on Gazprom's Motion to Compel were proper, and Mr. Pivert's past due response is meritless.  Furthermore, contrary to Mr. Pivert's assertion, Gazprom has satisfied the requirements of 28 U.S.C. § 1782, which authorizes a United States district court to compel any "person" who "resides" or "is found" in the district to provide discovery.  28 U.S.C. § 1782.  By Mr. Pivert's own admission, he owns a house within the jurisdiction of the Court, and the business card attached to Gazprom's Application for Assistance Pursuant to 28 U.S.C. § 1782 pertains to Mr. Pivert and his employment in Houston.  Mr. Pivert also pays property taxes in Montgomery County, which is within this Court's jurisdiction.  These factors, and the other relevant facts, are more than sufficient to satisfy the liberal "resides" requirement of 28 U.S.C. § 1782.  Consequently, Mr. Pivert's Motion to Vacate the May 19, 2014 and August 5, 2014 Court Orders should be denied.

## II.   BACKGROUND

On May 9, 2014, Gazprom filed an Application for Assistance Pursuant to 28 U.S.C. § 1782 ("*Application*"), seeking, in part, to compel personal testimony and production of documents from Mr. Pivert.[1]  The purpose of Gazprom's Application is to assist the Twelfth Court of First Instance in Civil, Commercial, Transit and Banking Matters for the Judicial District of the Metropolitan Area of Caracas, Venezuela in evaluating a pending dispute, prospective claims to be filed against Mr. Pivert, and an ancillary seizure case, in part, related to payment of an invoice in connection with a service contract for the construction and installation

---

[1]   Gazprom also sought and obtained an order directing discovery from Mr. Pivert's employer, Lindsayca, Inc., to which copies of the May 19 Order, associated notices, and correspondence were sent; Lindsayca, Inc. retained counsel and responded to the discovery obligations imposed by that Order. Lindsayca, Inc. received correspondence at the Chrisman Road address and through its president, Jorge Santos.  Copies of the correspondence were also sent to Lindsayca, Inc.'s Venezuelan affiliate Lindsay, C.A. through its president, Héctor José.  *See* Exhibits **A – F**.

of a natural gas compression plant in Venezuela, and an underlying fraudulent scheme engineered by Mr. Pivert that bilked Gazprom out of millions of dollars.

On May 19, 2014, this Court granted Gazprom's Application, and issued an Order Granting Request for Assistance Pursuant to 28 U.S.C. § 1782 ("*May 19, 2014 Order*"), which required Mr. Pivert, by June 18, 2014, "to produce to counsel for Gazprom all documents in [his] possession, custody and control that pertain or relate to the Contract attached as Exhibit C to the Application for Assistance filed in this matter, including but not limited to the Contract's formation, execution, breach, and performance, as well as approvals, inspections, modifications, certifications, disbursements, invoices, and payments pursuant to the Contract, and Mr. Pivert's use of his apparent authority to bind Gazprom." (May 19, 2014 Order ¶¶ 2, 4 [Doc. No. 7]). The May 19, 2014 Order also directed that "[w]ithin thirty (30) days of the date of this Order, Jean-Marc Pivert shall appear for a videotaped deposition with respect to the subject matter of the dispute identified in Exhibits A through E to the Application for Assistance filed in this matter." (May 19, 2014 Order ¶ 1 [Doc. No. 7]). The May 19, 2014 Order was communicated to Mr. Pivert by e-mail and by Federal Express. (*See* May 21, 2014 E-mail to Mr. Pivert, attached hereto as **Exhibit A**; *see also* May 21, 2014 Letter to Mr. Pivert, attached hereto as **Exhibit B**).

On June 10, 2014, counsel for Gazprom sent correspondence to Mr. Pivert regarding scheduling the Court-ordered deposition. (*See* June 10, 2014 Letter to Mr. Pivert, attached hereto as **Exhibit C**). On June 16, 2014, a notice of deposition, which noticed Mr. Pivert's deposition for June 25, 2014, was sent via certified mail return receipt requested, U.S. mail and hand delivery. (*See* Notice of Deposition of Jean-Marc Pivert, attached hereto as **Exhibit D**).[2]

---

[2] Mr. Pivert was also served with a June 23, 2014 notice of deposition of his employer, Lindsayca, Inc. (as was Michael Maldonado, counsel for Lindsayca, Inc.). (*See* Exhibit D to Gazprom's Second Motion to Compel [Doc. No. 13]).

Despite the Court's clear directive, and despite the multiple notices given by e-mail, Federal Express, certified mail, U.S. mail and hand delivery, Mr. Pivert failed to appear for his Court-ordered and duly noticed deposition.  (*See* Certificate of Non-Attendance for the Oral and Videotaped Deposition of Jean-Marc Pivert, attached hereto as **Exhibit E**).

On June 20, 2014 Gazprom filed and served a motion to compel, for contempt, and for the imposition of sanctions against Mr. Pivert, based on his absolute non-responsiveness to the May 19, 2014 Order with respect to the production of documents.  This motion was served on Mr. Pivert by certified mail, return receipt requested.  (*See* Motion to Compel, For Contempt, and For Sanctions [Doc. No. 10]).  On July 10, 2014, Gazprom filed and served a second motion to compel, for contempt, and for the imposition of sanctions directed at Mr. Pivert, based on his failure to appear on June 25, 2014 for his Court-ordered and duly noticed deposition.  This second motion was served on Mr. Pivert by certified mail, return receipt requested.  (*See* Second Motion to Compel, For Contempt, and For Sanctions  [Doc. No. 13]).

On August 5, 2014, this Court granted Gazprom's motions, and issued an Order ("*August 5, 2014 Order*" and, collectively with the May 19, 2014 Order, the "*Court's Orders*") directing Mr. Pivert: (1) to appear for his deposition within thirty days of the date of the Order; and (2) to pay to Gazprom "the reasonable expenses incurred in seeking, with its motion, his deposition." The Court further noted that "*Any failure by Jean-Marc Pivert to appear for his deposition may result in a warrant being issued for his arrest*."  (August 5, 2014 Order ¶ 2 [Doc. No. 15]).  This order appears to be the statement that finally got Mr. Pivert's attention.

On August 7, 2014, a notice of deposition, which noticed Mr. Pivert's deposition for September 3, 2014, was served via hand delivery to Mr. Pivert's residential property in Spring, Texas, in addition to being served on Mr. Pivert via certified mail return receipt requested,

Federal Express, and U.S. mail. (*See* Notice of Video-Deposition of Jean-Marc Pivert, attached hereto as **Exhibit F**). Despite the Court's second clear directive, and despite the multiple notices sent to him by both in Texas and internationally, Mr. Pivert failed to appear for his second Court-ordered and duly noticed deposition. Rather, on the afternoon of September 2, 2014—less than twenty-four hours before this deposition—Mr. Pivert's counsel contacted Gazprom's counsel and stated that Mr. Pivert would not appear for the deposition. (*See*, Letter to Manuel G. Escobar, Jr. dated September 2, 2014, attached hereto as **Exhibit G**).

To date, Mr. Pivert has not produced documents, in clear violation of the Court's May 19, 2014 Order. Further, Mr. Pivert has willfully violated both the May 19, 2014 Order and the August 5, 2014 Order by twice failing (and even expressly refusing) to appear for his deposition. (*See* Certificate of Non-Attendance for the Video-Deposition of Jean-Marc Pivert, attached hereto as **Exhibit H**).

On September 2, 2014, shortly after his counsel's phone call, Mr. Pivert submitted his motion to vacate and set aside the May 19, 2014 and August 5, 2014 Orders. As explained in more detail below, Mr. Pivert's motion is untimely and fails to provide any basis to revisit the Court's Orders. Moreover, Gazprom has satisfied the requirements of 28 U.S.C. § 1782 and the Court's Orders were appropriate. Accordingly, for the reasons stated below, Gazprom requests that the Court deny Mr. Pivert's Motion to Vacate Orders.

### III. ARGUMENT AND CITATION OF AUTHORITY

### A. THE MOTION TO VACATE IS NOT JUSTIFIED AND MR. PIVERT RECEIVED NOTICE OF THE ORDERS.

#### 1. The Motion to Vacate Is Not Justified and Not Brought Within a Reasonable Time.

Though he does not denominate it as such, Mr. Pivert's Motion to Vacate is, in essence, a motion brought pursuant to FED. R. CIV. P. 60(b). This rule states:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: **(1)** mistake, inadvertence, surprise, or excusable neglect; **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); **(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; **(4)** the judgment is void; **(5)** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or **(6)** any other reason that justifies relief.

FED. R. CIV. P. 60(b). "Rule 60(b) relief will be afforded only in 'unique circumstances.'" *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) (citing *Pryor v. USPS*, 769 F.2d 281, 287 (5th Cir. 1985)). "Even where there exist extraordinary circumstances which might justify granting Rule 60(b) relief, the Rule nonetheless requires that such motion be made 'within a reasonable time.'" *Pryor*, 769 F.2d at 287-88. "What constitutes a 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *In re Osborne*, 379 F.3d at 283 (citing *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

Mr. Pivert does not argue that there is any "extraordinary circumstance" that justifies the relief that he seeks. In addition to the lack of an extraordinary circumstance, Mr. Pivert has not sought this relief "within a reasonable time." In fact, he offers no explanation for having taken

no action whatsoever for more than three months, despite the existence of a pending case and an order from the Court explicitly directing him to provide discovery.[3] Since there is no "extraordinary circumstance" that would justify Mr. Pivert being relieved from the Court Orders, the Court should deny the Motion to Vacate. *See, e.g.*, *Frazier v. Bd. of Trs. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1292 (5th Cir. 1985) (upholding denial of Rule 60(b) motion where motion was not brought within "a reasonable time").

**2. Mr. Pivert Received Notice of these Proceedings and of the Court's Orders.**

As detailed above, Gazprom has served Mr. Pivert with the filed pleadings, the Court's Orders, and deposition notices, in addition to sending him correspondence through a variety of means. In his motion to vacate, Mr. Pivert alleges, without explanation, that he "has not received nor has he been served with any of the ex parte [sic] motions" filed by Gazprom. (Motion to Vacate, p. 3 [Doc. No. 16]). He also states that he has "has not received nor has he been served with the Court's orders of May 19, 2014 and August 5 2014." (*See id.*). Nevertheless, Mr. Pivert's motion to vacate refers to the contents of *both* Gazprom's motions and the Court's Orders. Clearly, Mr. Pivert did received some form of notice of the motions and the Court's Order—his motion to vacate explicitly references them. It is simply not credible to infer that Mr. Pivert learned of the motions and the Court's Orders on September 1, 2014, obtained counsel in Texas that same day, and then filed a 17 page motion to vacate on September 2, 2014. To state,

---

[3] Significantly, while Mr. Pivert claims that he "[r]ecently … came to know of" these proceedings, he provides absolutely no details concerning *when* he learned of them, nor concerning *how* he learned of them. Nor does he provide any explanation as to how he could possibly have failed to receive any of the many notices provided to him concerning this case. For example, Mr. Pivert admits that a mail-forwarding arrangement exists at the Chrisman Road address in Houston. Furthermore, Michael Drake promised to advise Mr. Pivert of the correspondence after it was delivered to the Spring, Texas residential address. Finally, the service of the Court's second order compelling Mr. Pivert's attendance at his deposition was returned to Gazprom's counsel in a Federal Express package that had been surreptitiously opened and resealed. The complete absence of any such details means that Mr. Pivert has utterly failed to meet his burden of establishing action within a reasonable time as required by Rule 60(b).

as he does in the motion to vacate, that he still "has not received" these documents is therefore disingenuous.

More fundamentally, Mr. Pivert's vague and unsubstantiated allegation that he has not received any of the materials in this case is inexplicable, even disregarding his total lack of explanatory detail (such as how or when he learned of the case). Mr. Pivert statement admits that "when an item was received" at the Chrisman Road address on his business card, "it was forwarded to [him] in Venezuela." (Sworn Statement of Jean-Marc Pivert, p. 2 [Doc. No. 16]). By way of example, Gazprom's Application, the May 19, 2014 Order, and a June 10, 2014 letter from counsel for Gazprom to Mr. Pivert regarding scheduling the Court-ordered deposition, were all sent to Mr. Pivert at the Chrisman Road address. *See* Exhibits A, B, and C. Pursuant to the forwarding arrangement that Mr. Pivert admits to having, these three documents would have been forwarded to him in Venezuela, and Mr. Pivert offers no credible explanation as to why he did not receive these documents. Moreover, the same documents were also sent to Mr. Pivert through other means, including to the residential address from which a Mr. Michael Drake was forwarding mail to Mr. Pivert and to Lindsayca both in Houston and in Venezuela. (*Id.*; *see* **Exhibit I**, discussed below).

Mr. Pivert also asserts that he has not received any deposition notices. (Motion to Vacate, p. 3 [Doc. No. 16]). However, on June 10, 2014, counsel for Gazprom sent correspondence to Mr. Pivert, at both the Chrisman Road business address and the residential address in Spring, Texas, regarding scheduling the Court-ordered deposition. (*See* Exhibit C). Further, on June 17, 2014, a notice of deposition, which noticed Mr. Pivert's deposition for June 25, 2014, was served via hand delivery to a Michael Drake at Mr. Pivert's residential address in

Spring.[4]  Mr. Drake stated that he would notify Mr. Pivert of the delivery.  (*See* Affidavit of Delivery, attached hereto as **Exhibit I**).  Additionally, the August 7, 2014 deposition notice, which noticed Mr. Pivert's deposition scheduled for September 3, 2014, was served via hand delivery, certified mail return receipt requested, Federal Express, and U.S. mail.  This notice went to the residential address in Spring, to the business address on Chrisman Road, and to Lindsayca's address in Venezuela, with copies going to the president of Lindsayca, Inc. in Houston, to the president of Lindsay, C.A. in Venezuela and to the attorneys for both companies.  (**Exhibit F**; for proof of deliveries to the residential address, *see* Affidavit of Delivery dated September 5, 2014, attached hereto as **Exhibit J**, and Federal Express Proof of Delivery on August 8, 2014, attached hereto as **Exhibit K**; for proof of delivery to the Chrisman Road address, see **Exhibit J** and Federal Express Proof of Delivery on August 8, 2014, attached hereto as **Exhibit L**).

The August 7, 2014 correspondence sent by Federal Express to Mr. Pivert's address in Venezuela raises particular concerns.  Although sent to Mr. Pivert in Venezuela by Federal Express on August 8, 2014, the package was returned nearly one month later to Gazprom's counsel, who received it on September 4, 2014.  (*See* Copy of returned Federal Express envelope, attached hereto as **Exhibit M**).[5]  Significantly, while the FedEx envelope appears to be unopened at the top (with the "pull tab" undisturbed), there are two staples on the right side, such that the envelope appears to have been surreptitiously opened from the side and then resealed.  (*See id.*)  This correspondence was delivered to—and returned from—the same business address

---

[4]  The deposition notice was also served upon Lindsayca in Houston.  (*See* Exhibit D).

[5]  There are two stickers affixed to the envelope sent to Mr. Pivert: a white sticker that shows delivery to Mr. Pivert on August 8, 2014, and a green return sticker that states "Retornado al Origin" (i.e., Returned to Sender).

in Venezuela to which prior correspondence from Gazprom was delivered without incident. (*See* Federal Express Proof of Delivery to Lindsay, C.A. on June 6, 2014, attached hereto as **Exhibit N**).

Counsel for Gazprom also sent correspondence to Mr. Pivert via e-mail. (*See* May 21, 2014 Letter sent via e-mail, attached hereto as **Exhibit A**; August 7, 2014 Letter sent via-email, attached hereto as **Exhibit O**). These e-mails were not returned as undeliverable, and in his Sworn Statement, Mr. Pivert does not claim that he did not receive this e-mail correspondence.

Thus, Mr. Pivert's assertion that he has not received documents related to this matter rings false. Gazprom has contacted Mr. Pivert through multiple means. And Mr. Pivert's employer engaged counsel, responded to the May 19, 2014 Order, and entered into discussions with Gazprom to resolve its own discovery obligations under the Order. For his part, Mr. Pivert simply chose not to lift a finger to respond to any of Gazprom's many communications until the possibility of an arrest warrant, mentioned in the Court's August 5, 2014 Order, became an imminent likelihood. At that point, he conveniently appeared through counsel, making conclusory and internally inconsistent claims of ignorance.[6]

For Mr. Pivert to attempt to continue to evade the Court Orders issued in this case is an affront to the Court. Accordingly, Gazprom asks the Court to deny Mr. Pivert's motion to vacate and set aside the Court's Orders.

---

[6] Indeed, Mr. Pivert's "sworn statement" raises many more questions than it purports to answer. He doesn't say when or how he purportedly learned of the case. He doesn't explain the supposed failure of both of his forwarding arrangements for the Lindsayca business address on Chrisman Road and the residential address in Spring. He doesn't provide any plausible ground for his purported ignorance of the case in the face of his employer's participation, engagement of counsel in both countries, and receipt of multiple notices, much less in the face of the many communications addressed to him. And, although Mr. Pivert claims that his most recent stay at his residential property in Spring was for three months in 2013, he tellingly fails to provide any information concerning the nature and extent of his *previous* use of that property up to that point.

### B.    THE COURT'S INITIAL ORDER WAS PROPER, SINCE MR. PIVERT RESIDES IN THIS COURT'S JURISDICTION PURSUANT TO 28 U.S.C. § 1782.

Finally, not only has Mr. Pivert failed to demonstrate a procedural basis for belatedly challenging the Court's orders after having flagrantly ignored them, but the underlying basis of his challenge on the merits is also similarly unfounded.

28 U.S.C. § 1782 authorizes a United States district court to compel any "person" who "resides" or "is found" in the district to provide discovery.  28 U.S.C. § 1782.  Mr. Pivert is a person within the jurisdiction of this Court for purposes of § 1782, and therefore he must follow Orders issued by this Court.

Section 1782 applies liberal constructions to the terms "resides" and "is found," consistent with the broad construction that Congress envisioned for the statute's application.  The statute was amended in order to provide for broad language, removing restrictive premises, so as to allow federal district courts to order depositions free of the former restrictive residency requirement.  *See In re Edelman*, 295 F.3d 171, 179–180 (2d Cir. 2002).  In analyzing the legislative history "to gain insight into Congress' purposes" regarding the "reside or is found" language within § 1782, the Second Circuit has observed:

> Congress amended § 1782(a), in part,  . . . by striking out the word 'residing.'  Thus the statute as amended allowed the federal courts to authorize the deposition of 'any witness within the United States.'  According to the House Report on the amendment, the change was intended to 'correct restrictive language in section 1782 . . . and permit depositions in any judicial proceeding without regard to whether the deponent is 'residing' in the district *or only sojourning there*.  By definition, a sojourn is 'a temporary stay (as a traveler in a foreign country).'

*Id.* (internal citations omitted).

Courts that have addressed what it means to "reside or be found" for purposes of § 1782 consider, as determinative, factors such as where the respondent lives, ownership or rental of real

property within the district, location of full-time employment, and the filing of tax returns. *See In re Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007) (considering respondents' respective places of residence, visits to the district, and ownership of property in the district); *In re Application of Oxus Gold PLC*, No. Misc. 06-82, 2006 WL 2927615 (D.N.J. Oct. 11, 2006) (explaining that factors considered by courts in determining "residence" in the context of § 1782 include "(1) the location of a spouse or children, (2) ownership of property, (3) location of filing for tax purposes, (4) amount of time spent in the United States, and (5) location of full time employment" and holding that petitioner had satisfied § 1782 because respondent could be found in New Jersey on a consistent basis); *In re Kolomoisky,* No. M19-116, 2006 WL 2404332 (S.D.N.Y. Aug. 18, 2006) (noting that whether respondent was a permanent resident of the United States had no bearing on a determination of his residency in the Southern District of New York for purposes of § 1782 and looking to ownership of property in the district and to the filing of tax returns in order to determine respondent's residency under § 1782); *In re Microsoft*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006) (considering respondent's place of residence and place of employment in making a determination of § 1782 residency).

In this case, Mr. Pivert is a natural person who, by his own admission, owns residential property at 38 Skyflower Drive, Spring, Texas 77381-2981. (Sworn Statement of Jean-Marc Pivert p. 2 [Doc. No. 16]). He also admits to having resided in this property for months at a time— although he fails to provide any such details other than a generic description of his most recent three-month stay. (*See id.*). Mr. Pivert also pays property taxes in Houston. (*See* Application, Exhibit D [Doc. No. 1]). Additionally, Mr. Pivert acknowledges that the business card provided by Gazprom to the Court "lists [his] business address as 14350 Chrisman Rd. Houston, Texas and [his] phone number as 713-467-9560." (Sworn Statement of Jean-Marc

Pivert, p. 2 [Doc. No. 16]). According to the business card, Mr. Pivert is employed by Lindsayca as its Vice-President for Finance and Administration. (*See* Application, Exh. E [Doc. No. 1]). Mr. Pivert does not deny that he is employed by Lindsayca in this capacity, and he admits to having used the business address and phone number listed on the business card. (Sworn Statement of Jean-Marc Pivert, p. 2 [Doc. No. 16]).

Furthermore, in addition to his employment with Lindsayca, Mr. Pivert has other business ties to Houston, Texas. According to documents on file with the Texas Secretary of State, from April, 2012 until February 21, 2014, Mr. Pivert was the Director of G. Energy Solutions, Inc., a corporation registered to do business in Texas. (*See* Business Organizations Inquiry, Texas Secretary of State, attached hereto as **Exhibit P**). According to the Texas Secretary of State's office, the business address for G. Energy Solutions, Inc. was 14350 Chrisman Road, Houston, Texas 77039-1509—the same as his business address at Lindsayca, Inc. (*See id.*).

Both the property owned by Mr. Pivert at 38 Skyflower Drive, Spring, Texas and the property located at 14350 Chrisman Rd. Houston, Texas, which appears on Mr. Pivert's Linsdayca business card as his Lindsayca business address, are located in Montgomery County and, therefore, are within this Court's jurisdiction. Consequently, Mr. Pivert resides within the Southern District of Texas for purposes of § 1782, and he is subject to this Court's authority. *See, e.g.*, *In re Godfrey*, 526 F. Supp. 2d at 419; *In re Application of Oxus Gold PLC*, 2006 WL 2927615 at *2; *In re Kolomoisky,* 2006 WL 2404332 at *3. Mr. Pivert must abide by the Orders issued by this Court, and his request to vacate the Court's Orders should be denied.

## IV. CONCLUSION

Based on the foregoing argument and authority, Gazprom respectfully requests that (i) the Court issue an order denying Mr. Pivert's motion to vacate the Orders of May 19, 2014, and August 5, 2014, and (ii) for other and further relief as the Court deems appropriate under the circumstances.

Dated: September 22, 2014

Respectfully submitted,

**BRYAN CAVE LLP**

_/s/ Keith M. Aurzada_

Pedro J. Martinez-Fraga (admitted *pro hac vice*)
  Florida Bar No. 752282
200 South Biscayne Blvd., Suite 400
Miami, FL 33131
Email: pedro.martinezfraga@bryancave.com

Keith M. Aurzada
  Attorney-in-charge
  Texas Bar No. 24009880
  Southern District Bar No. 24728
James C. Bookhout
  Texas Bar No. 24087187
  Southern District Bar No. 2254975
2200 Ross Avenue, Suite 3300
Dallas, TX  75201
Telephone:  214.721.8000
Facsimile:  214.721.8100
Email: keith.aurzada@bryancave.com
       james.bookhout@bryancave.com

**ATTORNEYS FOR GAZPROM LATIN AMERICA SERVICIOS, C.A.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2014, a copy of the foregoing was served in compliance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas electronically via the Court's CM/ECF filing system and via certified mail, return receipt requested, to the following:

| | |
|---|---|
| Manuel G. Escobar, Jr.<br>201 W. Poplar<br>San Antonio, TX 78212 | Michael Maldonado<br>THE MALDONADO LAW FIRM<br>715 Artesian<br>Corpus Christi, TX 78401 |
| **Attorney for respondent Jean-Marc Pivert** | **Attorney for respondent Lindsayca, Inc.** |

                                                   */s/ James C. Bookhout*
                                                   James C. Bookhout