IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| GAZPROM LATIN AMERICA | § | CASE NO. 4:14-MC-01186 |
| SERVICIOS, C.A. | § | HOUSTON, TEXAS |
| | § | WEDNESDAY, |
| VERSUS | § | FEBRUARY 4, 2015 |
| | § | |
| LINDSAYCA, INC., ET AL | § | 11:03 A.M. TO 11:36 A.M. |

INITIAL CONFERENCE

BEFORE THE HONORABLE FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:                    SEE NEXT PAGE

FOR THE DEFENDANT:                    SEE NEXT PAGE

CASE MANAGER:                         BEVERLY WHITE

COURT RECORDER:                       PAULA CRAWFORD

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office) ◊ (281) 277-0946 (fax)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:


FOR THE PETITIONER, GAZPROM          BRYAN CAVE, LLP
LATIN AMERICA SERVICIOS,             Keith M. Aurzada, Esq.
C.A.:                                James Bookhout, Esq.
                                     2200 Ross Avenue, Suite 3300
                                     Dallas, Texas 75201


FOR LINDSAYCA, INC. AND              ATTORNEY AT LAW
JEAN-MARC PIVERT:                    Manuel G. Escobar, Jr., Esq.
                                     201 West Poplar
                                     San Antonio, Texas 78212

1       <u>HOUSTON, TEXAS; WEDNESDAY, FEBRUARY 4, 2015; 11:03 A.M.</u>

2               THE COURT:  All right.  This is Gazprom Latin

3       America Servicios -- oh, I should have put on my accent --

4           (General laughter.)

5               THE COURT:   -- Servicios, C.A. versus Lindsayca --

6               MR. ESCOBAR:  Lindsayca.

7               THE COURT:   -- Lindsayca, Inc., et al.  All right.

8       So there are several motions that are pending --

9               ELECTRONIC RECORDING OFFICER:  Could you all please

10      announce your names for the Record?

11              MR. AURZADA:  Yes, ma'am.  Keith Aurzada and James

12      Bookhout of Bryan Cave on behalf of Gazprom Latin America

13      Servicios, C.A.

14              THE COURT:  All right.

15              MR. ESCOBAR:  Your Honor, Manuel Escobar appearing

16      on behalf of Jean-Marc Pivert.

17              THE COURT:  Okay.  And who is that?

18              MR. ESCOBAR:  He is a party that the, I guess the

19      original movant is seeking to depose.

20              THE COURT:  Okay.  And the Defendants aren't

21      represented here at our hearing?

22              MR. AURZADA:  Your Honor, if I might, I'd like to

23      give a little bit of background.  This is kind of an odd duck.

24      It was an exotic animal --

25              THE COURT:  I know Judge Harmon made an order and

4

1    then I did something and --

2                MR. AURZADA:  Yeah, so procedurally --

3                THE COURT:   -- now she's asking me to reconsider

4    something she did.

5                MR. ESCOBAR:  There's actually just one motion,

6    Judge, before the Court right now.

7                THE COURT:  Yeah, which one is that?

8                MR. ESCOBAR:  The motion to vacate, Your Honor.

9                THE COURT:  Motion to vacate that was filed by

10   Jean-Marc Pivert on September 2, and a response was filed

11   September 22.  It's Document Number 16.  Go ahead.

12               MR. AURZADA:  That's right.  So, Your Honor, this is

13   a proceedings under 28 USC 1782, which is to obtain testimony

14   and evidence in aid of a foreign proceeding.  So the real

15   over-arching policy of this provision of 28 USC is to make US

16   courts available for matters -- where there is discovery that

17   can be taken in the United States to proceed -- to assist

18   proceedings that are taking elsewhere, so over-arching.

19               What happened is my client, Gazprom, hired Lindsayca

20   to build a gas plant in Venezuela.  As it relates to Jean

21   Pivert, it would -- the purpose of the discovery is for my

22   client to determine was he actually working for the supplier

23   as well as his employer, Gazprom, simultaneously.  That's the

24   allegation.

25               There's anecdotal evidence that we put in our papers

1   to suggest that.  So we filed a motion, opened a miscellaneous

2   proceeding to get this discovery, and it was ordered by Judge

3   Harmon that our application was granted to take a deposition

4   and to get production of documents.

5          The response to numerous service requests that are

6   in the pleadings was absolute crickets (phonetic) from

7   Mr. Pivert.  So then we filed a motion to compel, that was

8   granted, a second motion to compel was granted.

9          And then opposing counsel got involved and there was

10   some allegations made concerning whether or not notice was

11   received.  I don't think that needs to be resolved for

12   purposes of the motion to vacate, because clearly notice has

13   been received, he's hired counsel, counsel's made an

14   appearance going back to September of this year.  So now

15   Mr. Pivert is aware of this.

16          There is nothing in the motion to vacate that would

17   suggest even remotely that the previous grant of the request

18   by Judge Harmon should be overturned.  And so at this point,

19   to me, where this hearing needs to go is just getting on with

20   the deposition scheduling and the production of the documents.

21          And if that is not going to be the case, then we

22   need to reschedule and come back with Mr. Pivert so that he

23   can answer why he should not be subject to discovery if and

24   when he comes to the United States.

25          THE COURT:  And where is he?

1          MR. AURZADA:  Well --

2          MR. ESCOBAR:  In Venezuela, Your Honor, and he's

3     always been in Venezuela during the entire proceedings.

4          MR. AURZADA:  Your Honor, I want to be real clear on

5     that point, that where he lives is not the test under Section

6     28 USC 1782.  It's where he resides or can be found.  And so

7     when you look at the case law, the case law speaks with one

8     voice here, and I can get into the cases, but even just,

9     sojourning is the word that the 2nd Circuit used, which means

10    to take a trip to, is enough.

11         And so there are two facts that are critical here.

12    One, Mr. Pivert owns real estate in Texas.  Second, he's been

13    here before.  And I guess the third point is that he has

14    formed a corporation under the Texas Secretary of State in the

15    past.  So he can be found here, and that's the purpose of this

16    statute.

17         Now if he never comes back to the United States,

18    then I guess we really won't be able to take his deposition,

19    because we're going to apparently need the marshals to go

20    gather him up and bring him for the deposition.  But that's

21    why we need the order, so that he can't pop around the globe

22    and evade the discovery to which we're entitled.

23         THE COURT:  Or at least not pop around the United

24    States.

25         MR. AURZADA:  Yes, Your Honor.  Oh, that's exactly

1    right.  You're exactly right.  Shouldn't be able to pop around
2    the United States.  That's right.
3            THE COURT:  Anywhere in the United States.
4            MR. AURZADA:  He should be subject to jurisdiction
5    and a deposition.  That's the purpose of this statute.
6            THE COURT:  Okay.  Okay.
7            MR. ESCOBAR:  Judge --
8            THE COURT:  I'd like to hear your point of view.
9            MR. ESCOBAR:  Yes, ma'am.  First of all, the statute
10   says that -- and I'll read from the statute, it says,
11       "The District Court in the district in which a
12       person resides or is found and order him to give his
13       testimony."
14            All right.  That's the very first thing.  And
15   counsel said that, Oh, we just need to move on with the
16   deposition because nothing in the motion suggests that we're
17   saying that the Court improperly issued that order.  That's
18   the whole basis of the motion to vacate.
19            Our position is that the order was improperly
20   entered.  And certainly my client did not have notice of
21   either the motions or the Court's order subsequent to the
22   Court entering those orders.  And he hired me in connection
23   with -- once he found out about the Court's orders, then he
24   hired me, and of course we filed a motion to vacate the
25   orders.

1          And it's certainly our position that, to begin with,

2     that the Court improperly entered those orders.  Counsel says

3     that they need this deposition with regard to some underlying

4     litigation.  The motion that is filed, their first position is

5     that the order is needed in connection with litigation that's

6     pending in Venezuela.  Not pending in the United States, but

7     pending in Venezuela is where the litigation -- at least

8     initially when their first motion was filed, that's what they

9     were alleging.

10          Well, Judge, they've settled the underlying

11     litigation in Venezuela.  That litigation, it's my

12     understanding, is no longer pending.  I talked to counsel

13     earlier briefly and he did indicate to me that that -- that

14     they did settle that litigation.  And so there is not

15     litigation in Venezuela present at present.

16          Now he did intimate that they may file a lawsuit

17     against my client, you know, they may initiate some

18     litigation.  I mean they may do a lot of things.  But the

19     reality of it is, is right now as we sit here, there is no

20     litigation pending, or at least that litigation has been

21     settled between all the different parties, Gazprom, Lindsayca,

22     there's two Lindsayca corporations, one's a Venezuela

23     corporation, one is a Texas corporation, and both -- they

24     settled with everybody.  So there's no litigation pending in

25     Venezuela.

1          Second of all, Judge, a fairly -- I mean I think

2     it's a fairly flippant position to take to say that, Well, we

3     can ignore the statute, the statute's not important, there's

4     already been an order and so we need to move on and just make

5     sure that we have these -- this deposition taken.

6          The evidence that's before the Court, and we've

7     submitted affidavits with regard to my client's residence.  My

8     client is a resident of Venezuela.  He's not a resident of the

9     United States.  The last time he was in the United States

10    was -- I believe it was in March of 2013, which is over a year

11    before this motion was ever filed.  This motion was filed in

12    May of 2014, the last time he was in the United States was in

13    March of 2013, about 12 to 14 months before the motion was

14    even filed.

15         He does not come to the United States regularly.

16    Again, he hasn't been here at all since then.  Resides in

17    Venezuela.  And in all of this they know that he resides

18    there.  He owns a house in -- I believe it's Spring, Texas if

19    I'm not mistaken, Judge.  But certainly within this district.

20    But he hasn't even been to that house since March of 2013.

21         We've submitted an affidavit of a person who

22    actually sits, you know, house sits, or stays at the house,

23    and based -- and what that affidavit says is that I mean he

24    doesn't come here.  You know, he hasn't been here in quite

25    some time.  The only previous time before that he says that he

1    was here in March of 2013 and -- he left in March of 2013 and

2    he had been here for about three months.

3           He was here as a tourist, he did whatever he was

4    going to do, he left.  Of course this thing doesn't happen for

5    another -- over another year.  Before that he did reside in

6    the United States in like -- and it's in the motion, I believe

7    it's 1991 to '94 if I'm not mistaken.  He attended LSU in

8    Louisiana, and that was in 1991 to 1994 he attended here.  I

9    don't think that makes him -- none of these things make him a

10    resident of this district, and that --

11           THE COURT:  What about his corporation?

12           MR. ESCOBAR:  The corporation actually is --

13    forfeited its existence, it doesn't even exist anymore.  He

14    forfeited existence last year.  It's a corporation that they

15    created.  As I understand it never really did anything.  And

16    again, he forfeited its existence.  I think counsel even

17    submitted to the Court proof, I mean it's their evidence,

18    submitted proof that the corporation forfeited its existence

19    over a year ago.  And so I mean there is no corporation here.

20           The only other evidence they offer is they offer a

21    business card, which we don't know when this business card

22    even was prepared or when it was used.  There's some case law

23    that addresses this.  And so they used the business card.

24           And basically what it would do is that the Texas

25    corporation, Lindsayca, would receive certain documents or

telephone calls and they would forward those to him in
Venezuela.  But he -- on his business card he had the address
here in Houston.  All right.  In his affidavit he tells the
Court that it's been over two years since they even used that
practice of forwarding phone calls and forwarding mail.

So I mean it's been some time so I don't know how
counsel, again, can argue, one, he's a resident here, and two,
he can found here because he owns a house here.  Now how does
that make logical sense?  I mean Texas law does provide that
foreign nationals can own property in this state.  I mean
there's a specific statute that talks about that, so there's
nothing illegal or improper about anything like that.

He tells you in his affidavit that that's an
investment property, and he's maintained that property since
that time.  But because he owns a house that makes him found
in this district?  The cases that do exist out there are
cases -- and there's not a lot of them, but there are some
cases out in New York in particular --  but there are some
cases where people come here periodically, they travel here.
Right.  Yes, they own a house, in one particular case a
gentleman owned a house near New York City, but he would come
to the house periodically, he would stay there on occasion.

And so the Court said that that was enough to -- and
he was served -- actually, he was actually served, personally
served with a subpoena in that particular district, so the

12

1    Court said, Hey, he's found in that district because he was

2    served -- number one, he was served with a subpoena in this

3    district, and number two, he has a house here that he goes to

4    periodically.

5        Mr. Pivert doesn't come to the United States.  He

6    hasn't been here for -- again, since March of 2013, and before

7    that he hadn't been here since 1994 as I understand.  So how

8    you can jump from he has a house here to that makes him being

9    found here is illogical.

10       The other point, Your Honor, is that my client says

11   he never received any of the motions, he didn't receive the

12   Court's orders.  The evidence that they've submitted are

13   things like they hand-delivered a copy of the Court's order to

14   the house in Spring.  Their own summary judgment -- or their

15   evidence that they submitted to the Court is -- are affidavits

16   from people who delivered those.  One of the affidavits says,

17   We delivered the order and there was no one there, so we left

18   them on the porch.  That was their hand-delivery.

19       The other one is that they delivered it and there

20   was a gentleman by the name of Michael Drake who was living

21   there -- that's the gentleman who I alluded to earlier -- and

22   Michael Drake accepted it.  Michael Drake has submitted an

23   affidavit where he says that this guy from some -- we're

24   talking about a delivery service, we're not talking about

25   anybody -- more than that, it was just a delivery service guy

1     that delivered a package and the delivery service guy said,

2     Here, take it, all you're doing is accepting it, you know,

3     that way I can say that I delivered it.  That's it.

4           And he told -- in his affidavit, he tells us that he

5     told the delivery guy, you know, if this is for Michael

6     Pivert, he doesn't -- or, Jean-Marc Pivert, he doesn't live

7     here, he lives in Venezuela.  And that's when the delivery man

8     said, Well, just accept it, you know, that's all you're doing,

9     you're just taking the package.  So he wasn't there.  He could

10    not be found in this district.

11          And I believe that the Court has to determine that

12    he's either a resident or that he can be found in this

13    district.  And I'm talking about at the time either the

14    motion's filed or that he's served with a subpoena or

15    something.  And I believe those are jurisdictional, Your

16    Honor.

17          Unless the Court can make that finding, and there's

18    case law that counsel himself cites some of it, that says you

19    have to make those findings first.  If you don't make those

20    findings, then you can't compel somebody to come all the way

21    from Venezuela to have his deposition taken in a case that's

22    already been settled and it's my understanding has been

23    dismissed in Venezuela.

24          It just, again, doesn't make logical sense that you

25    would do that.  He doesn't live here, he doesn't reside here,

1    he cannot be found in this district.  And I believe that those

2    are jurisdictional issues that the Court needs to resolve

3    first before it can even consider the issuance of the order.

4            These orders that we're talking about that he's

5    seeking to compel my client on, find him in contempt of court,

6    et cetera, those are orders that were entered without the

7    benefit of my client having ever received the motions to begin

8    with, the applications, my client ever having responded to

9    them.  Of course he didn't receive them, he didn't respond to

10   them.  And so they issued orders.

11           So counsel wants to make it seem as if, oh, all this

12   has already been determined.  The Court's already determined

13   all these things, that he's a resident, that he can be found

14   here, all these things have been determined.  I don't frankly

15   know, Judge, what the Court did before it issued the orders.

16   I mean the Court did  issue orders and they're there, they're

17   here.  And those are the orders, again, we're asking the Court

18   to vacate.  But the reality of it is, those were issued

19   without the benefit of my client having made any presentation

20   whatsoever.

21           THE COURT:  Was your client involved in that

22   litigation in Venezuela?

23           MR. ESCOBAR:  No, he's not a party to it.

24           THE COURT:  He was not.

25           THE COURT:  He was not a party to it, is not --

1    well, there's no litigation now.

2             THE COURT:  There's not now but was he a party to it

3    then?

4             MR. ESCOBAR:  No, ma'am.

5             THE COURT:  Does the litigation need to be pending

6    for this statute to apply?

7             MR. AURZADA:  Absolutely not.  It can be -- this is

8    an aid that can be used to investigate potential proceedings

9    to be commenced.

10            THE COURT:  Okay.

11            MR. AURZADA:  And so I want to make sure that we

12   don't mix apples and oranges here talking about jurisdiction.

13   Okay.  This is not an attempt by Gazprom to sue Mr. Pivert in

14   the United States.  This is an attempt to seek discovery.  So

15   it's a different standard altogether and so Section 1782

16   authorizes the United States to compel any person who resides

17   or is found in the district to provide discovery.

18            So I'm going to read something that the 2nd Circuit

19   observed in just construing 28 USC 1782.

20        "Congress amended 1782 in part --"

21             -- and this was done in the '60s --

22        "-- by striking out the word residing.  Thus the

23        statute, as amended, allowed the federal courts to

24        authorize the deposition of any witness within the

25        United States.  According to the House report on the

1          amendment, the change was intended to correct

2          restrictive language in Section 1782 and permit

3          depositions in any judicial proceeding without

4          regard to whether the deponent is residing in the

5          district or only sojourning there.  By definition a

6          sojourn is a temporary stay as traveler in a foreign

7          country."

8               So what the 2nd Circuit is here saying is look at

9     that amendment that was done in the '60s to this section.  It

10    was intentionally made broad to not include a residency

11    requirement.

12              So then when you look at the cases and you look at

13    our papers, factors to determine whether or not you have --

14    you can be found include the ownership of property, the

15    location of filing for tax purposes.  I would note that the

16    taxes are paid on this real property that is owned by

17    Mr. Pivert in -- here in -- Your Honor, I have drawn a --

18    Harris County, sorry.

19              Mr. Pivert is employed by a US company, Lindsayca,

20    and he has spent time in the United States, obviously enough

21    time to get a four-year college degree as well as own an

22    investment property.  You know, his affidavit says that the

23    home in Spring, Texas is an investment property.

24              So what we are not doing is applying a

25    jurisdictional standard for personal jurisdiction where we

1   have to look at ties to the jurisdiction.  The point is, is if

2   you can be found in the United States, you can be subject to

3   discovery here.  It doesn't mean he's going to be sitting in

4   the witness chair as a party to a litigation.  We are looking

5   for aid of discovery under that -- under 28 USC Section 1782.

6           THE COURT:  Okay.  What is it you want to discover

7   from him?

8           MR. AURZADA:  Bottom line it is my client's position

9   that at the same time he was managing on my client's behalf

10   the construction of a gas plant in Venezuela by Lindsayca, he

11   was also working for Lindsayca.  In other words, he was

12   employed by both the owner of the facility and the --

13           THE COURT:  Which is his.

14           MR. AURZADA:  Gazprom was having the facility

15   constructed, Lindsayca was doing the construction.

16           THE COURT:  So he was being paid by both of them?

17           MR. AURZADA:  That's what we believe and we need the

18   discovery to discern that.

19           THE COURT:  Okay.  And then what?

20           MR. AURZADA:  If that happens and we learn that it

21   was, in fact, the case, Your Honor, an evaluation will be made

22   whether or not there is jurisdiction to sue him here or in

23   Venezuela or in France.

24           THE COURT:  What happens with the Venezuela

25   litigation?  Can you enlighten me about that?

1          MR. AURZADA:  That's a great question.  Yeah, there

2     was a settlement reached -- it was a $43 million contract,

3     there was a settlement reached between Gazprom, my client, and

4     Lindsayca in which Gazprom did not pay the remaining balance

5     due under an invoice and, in fact, received $10,000 back from

6     Lindsayca.  Which seems like a very small sum, you know, given

7     the size of the contract, but the last invoice was a

8     substantial invoice.

9          THE COURT:  And how much money did you claim that

10    you paid Mr. Pivert, you know, what's your dispute valued at

11    regarding him?

12         MR. AURZADA:  I don't have that fact in front of me.

13    And if it was determinative to the Court I will be happy to

14    find out and --

15         THE COURT:  It's not really.  I'm just trying to

16    find out background information.

17         MR. AURZADA:  Yes, Your Honor.

18         THE COURT:  You know, really you're just potentially

19    complaining about paying him when he was also being paid by

20    Lindsayca?

21         MR. AURZADA:  Yeah, I don't think it's that simple

22    because --

23         THE COURT:  No.

24         MR. AURZADA:   -- there's the possibility that we

25    over-paid substantially in terms of cost overruns, materials,

1    time and expenses under the underlying contract, which is, you

2    know, much, much more complicated than just what was his

3    salary.  Because if you have your on-the-ground manager in

4    Venezuela working for the supplier of a $43 million contract

5    simultaneously, there are all kinds of potential bad things

6    that could happen.

7              THE COURT:  And not loyalty to you --

8              MR. AURZADA:  Yes, Your Honor.

9              THE COURT:  -- necessarily.  Okay.  Okay.  So your

10   client, Mr. Escobar, does not want to give his deposition

11   about these matters.  Right?

12             MR. ESCOBAR:  I don't think he does, Judge.

13             THE COURT:  No matter where.

14             MR. ESCOBAR:  Oh, I don't know no matter where.  I

15   talked to counsel, why don't you go depose him in Venezuela.

16             THE COURT:  Would he be willing to do that?

17             MR. ESCOBAR:  I don't know if he would, Judge, or

18   not.  I've been hired to represent him on this matter.

19             THE COURT:  We should ask that.  I mean we should

20   ask him if he'd be willing to do that, and if the, you know --

21             MR. ESCOBAR:  Judge, if I may?

22             THE COURT:  If you guys would be willing to go

23   there.  I mean just it should be explored.

24             MR. ESCOBAR:  You know, they filed a lawsuit against

25   him in Venezuela, they can -- I mean I would think that they

1    have some procedure where they can depose him in Venezuela.

2              THE COURT:  I'm just asking.

3              MR. ESCOBAR:  And, Judge, counsel only read you part

4    of that statute that he talked about a few moments ago, and it

5    said the District Court in which a person resides or is found,

6    and we order him to give his testimony or statement or to

7    produce a document or other thing for use in a proceeding in a

8    foreign or international tribunal.  Well, there is no foreign

9    or international tribunal pending, because that's been

10   resolved, it's been settled.  That's number one, Judge.

11             Number two, interestingly, he read for you from that

12   2nd Circuit case.  I think that's the case that is really an

13   instructive case.  Right.  So it says that you either have to

14   reside there, right, or you have to be temporarily there.

15             THE COURT:  Right.

16             MR. ESCOBAR:  Right.  You have to be temporarily

17   there.  So he comes to the United States, we serve him with a

18   subpoena, he's temporarily there, he's got to give his

19   testimony.  And I'm saying the United States.  He has to be in

20   this district.  Right.  In this district.

21             And so he's not temporarily here.  He certainly

22   doesn't reside here, and he's not temporarily here.  Again, he

23   hasn't come here since March -- he hasn't even been in the

24   Houston area since March of 2013, and before that it was,

25   what, 20 years before that that he was here.  You know, I

1    don't think that that is -- he is temporarily here at the time

2    that the petition is filed, or that the Court issues any kind

3    of orders.

4           THE COURT:  Okay.  Well, I understand -- I think I

5    understand the point of view of each side.  But also I'd like

6    you to at least have a, you know, exploration of the

7    possibility of getting the deposition by going to Venezuela.

8    I mean it's not the other side of the world.  And there are

9    other ways to get depositions besides even traveling there.

10   And if Mr. Pivert was amenable, and we don't know that he is,

11   but I'd like, you know, you to find out if he is, and you guys

12   to decide if you'd be willing to do it another way.

13          If he were, you know, agreeing to give his

14   deposition by video conference or whatever, for instance, or

15   even if you went there to take his deposition, maybe it's not

16   a bad place to visit.  I don't know.

17          MR. AURZADA:  Your Honor, we would be -- I mean we

18   are happy to entertain that, and I can't speak for my client.

19   The only thing I really want is I want the ability to enforce

20   that order against him in the United States.

21          MR. ESCOBAR:  That's what he wants.

22          MR. AURZADA:  So --

23          THE COURT:  I understand.

24          MR. AURZADA:   -- so for example if we agree -- no,

25   what I'm saying is we can agree to take the deposition in

1    Venezuela, but if he doesn't show for the deposition like he

2    did last time --

3              THE COURT:  Where was that and when?

4              MR. ESCOBAR:  Here.

5              MR. AURZADA:  It was in Houston.

6              THE COURT:  Oh, okay.

7              MR. AURZADA:  It was in Houston.  We noticed the

8    deposition, we noticed out best we could.  He claims he didn't

9    get the notice.  So if there an award of cost this would

10   obviously need to be dealt with in great detail.

11             THE COURT:  So that would have required him to

12   travel here from Venezuela.  Right?

13             MR. ESCOBAR:  Yes.

14             THE COURT:  Your notice --

15             MR. AURZADA:  We're not sure that that's a correct

16   statement, that he's never been to Houston since the last date

17   and his deposition.  But potentially, yes, he would have

18   had -- it would have required him to travel here.

19             THE COURT:  Okay.  Well, I just wonder, do you

20   really want his deposition, or do you want an order against

21   him.  And if you really want his deposition, I think you

22   should at least explore other avenues of getting it.  You

23   know, his lawyer's not telling me he's been instructed that he

24   will not give his deposition like by alternate means or in

25   another, you know, location.  And now that he's got a lawyer,

1    that's a big plus, you know, so I think you should talk about

2    that.

3              MR. AURZADA:  We're happy to discuss a deposition

4    under alternate means, so long as we get an order from the

5    Court so that we know that when and if he doesn't appear in

6    Venezuela or France or somewhere else on the planet --

7              THE COURT:  France.

8              MR. AURZADA:   -- that I have a recourse.

9              THE COURT:  How about France?

10             MR. AURZADA:  Sure.

11             MR. ESCOBAR:  That would be nice.  That would be

12    very nice.

13             MR. AURZADA:  We'll take it.

14        (General laughter.)

15             MR. ESCOBAR:  Judge, he wants an order so that he

16    can -- I mean one of the things that he pointed out in his

17    motions is that he wants an order so that he can ask a judge,

18    if the guy didn't show up for his deposition, to issue a

19    warrant for his arrest.

20             THE COURT:  Where does your client work now?

21             MR. ESCOBAR:  In Venezuela, Your Honor.

22             THE COURT:  For whom?

23             MR. ESCOBAR:  I'm not frankly sure, Judge, to be

24    quite candid with you.  I'm really not sure.

25             THE COURT:  All right.  All right.  But you can

1    easily contact him.

2              MR. ESCOBAR:  I can contact him.

3              THE COURT:  All right.

4              MR. ESCOBAR:  And I'll tell the Court that I can

5    contact him.  But again, him giving his deposition is one

6    thing, this Court issuing an order requiring his -- to give

7    his deposition under this particular statute is an entirely

8    different thing.

9              THE COURT:  Okay.  I'd like you to talk about -- I'm

10   going to resolve the motion.  I'm going to have to think about

11   it a little bit before I enter an order, but in the meantime

12   I'd like you also to have this discussion about another way,

13   place, method of taking the deposition and whether or not, you

14   know, it could be done by agreement.

15             And if you're able to do that, I would like to you

16   let me know.  One way or the other I'd like you to let me know

17   about your, you know, negotiation --

18             MR. AURZADA:  Your Honor --

19             THE COURT:  -- the result of your negotiation.

20             MR. AURZADA:  -- may we, before the Court rules,

21   engage in those discussions and report back?

22             THE COURT:  I would prefer you do it that way.

23             MR. AURZADA:  And then when do we report back we may

24   include some additional facts that have sort of been raised by

25   the Court, and so if we could have a schedule of, you know,

1     reporting back and subsequent filings.

2               THE COURT:  Do you want a subsequent briefing

3     schedule?

4               MR. AURZADA:  I think that would be appropriate --

5               THE COURT:  What do you suggest?

6               MR. AURZADA:   -- in this case, Your Honor, because

7     it --

8               THE COURT:  Today's the 4th.

9               MR. AURZADA:  I would suggest two weeks for us, two

10    weeks for them.

11              THE COURT:  All right.

12              MR. ESCOBAR:  Judge, and I want to make sure the

13    Court understands this, right, you know, you have this motion,

14    you know, that's before the Court, and I frankly don't think

15    any more briefing on that motion is necessary.  I think you

16    read the case law, you read what's been submitted, I mean I

17    think there's enough there for this --

18              THE COURT:  What kind of additional briefing do you

19    want to do?

20              MR. AURZADA:  Your Honor --

21              THE COURT:  You say I've raised fact issues at our

22    hearing today.

23              MR. AURZADA:  That's --

24              THE COURT:  What is that, for instance?

25              MR. AURZADA:  For instance whether or not he's been

1    back to Texas.

2              THE COURT:  Oh.

3              MR. AURZADA:  That sort of thing.

4              THE COURT:  Okay.

5              MR. AURZADA:  He has an investment property here.  I

6    want to challenge that statement a little bit.  I think that's

7    appropriate, and we can do that while we're having our

8    discussions as to whether or not there's a way to come back

9    and get a resolution, because the Court I think accurately

10   have said, Look, you now have lawyers involved, we've had the

11   bright lights of a hearing.

12             I've told the Court my honest opinion, which is I

13   want the discovery.  I have no interest in just having an

14   order hanging over this man's head.  I don't.

15             THE COURT:  Well, then if you can --

16             MR. AURZADA:  Because if we -- if we take --

17             THE COURT:   -- get that, I really recommend that

18   you try to do it, you know.

19             MR. ESCOBAR:  Judge, and what I was --

20             THE COURT:  And two weeks for you and two weeks for

21   you, that'll give us time for, you know, Mr. Escobar to have

22   talks with Mr. Pivert and find out if there's some place you

23   guys could meet on the coast of France, somewhere like that.

24   That'll be -- okay.

25             (General laughter.)

1          MR. ESCOBAR:  Judge, I'm going to --

2          THE COURT:  I'm being silly, but I know -- I'm

3    serious that you should try to resolve it by agreement, and if

4    you can't, you will get two weeks from today to file

5    additional briefing.  You'll get two weeks after that to file

6    any response to whatever they file.  And then I'll make a

7    decision.

8          What were you going to say?

9          MR. ESCOBAR:  Judge, what I was going to say is

10   that, you know, just the fact that we're, you know, even going

11   to talk to him, he's got, Venezuela lawyers, my client does,

12   and so I mean there's this dispute over there and they're

13   doing whatever they're doing over there.  I have no idea what

14   they're doing in this Venezuelan court other than to know that

15   the case has been settled.

16         THE COURT:  It's resolved.

17         MR. ESCOBAR:  It's been settled.

18         THE COURT:  Right.

19         MR. ESCOBAR:  In its entirety.  And so, you know, I

20   don't want the Court to think that by saying, All right, we'll

21   talk about this, well, Your Honor, I'm here conceding that the

22   Court, you know, properly issued an order, or can enter an

23   order in this case, other than an order denying their request

24   because, again, if the Court doesn't make a finding that he's

25   a resident here or may be found here, then the Court, you

1   know, can't issue an order.  Again, an order other than

2   denying the request for the deposition.  That's all that can

3   be entered.

4                THE COURT:  Okay.

5                MR. AURZADA:  Your Honor, we've got to make one

6   thing really clear here, which is the dispute that has been

7   resolved is the lawsuit against -- by Lindsayca against my

8   client in Venezuela.  It has nothing to do with Mr. Pivert.

9                THE COURT:  I understand.

10               MR. AURZADA:  Okay.

11               MR. ESCOBAR:  It's just that that's the underlying

12  lawsuit on which they first started.

13               THE COURT:  Right.  Now they're -- they have other

14  grounds for the request it sounds like.

15               MR. ESCOBAR:  Maybe.

16               THE COURT:  Potential litigation.

17               MR. AURZADA:  Potentially.

18               MR. ESCOBAR:  Maybe.

19               THE COURT:  Yeah.  Okay.  Well, maybe the best way

20  to address everything is to give a deposition, but maybe not.

21  I mean it depends on, you know, your conversation with your

22  client and what you might be able to negotiate with your

23  opponent.  So I'm going to just sit back for, you know, eight

24  more weeks -- I mean two -- four more weeks and allow that

25  effort to take place.  And then after you finish the briefing

1    though, I'll try to resolve it very quickly.

2             MR. AURZADA:  Will you want a subsequent hearing,

3    Your Honor, that we should set now, or will you want to just

4    hear it on the papers?

5             THE COURT:  I don't there's a need for it.  If there

6    really is a need for it, if something unusual happens, of

7    course I'd be happy to set another hearing.  But right now I

8    don't think we need another hearing.

9             MR. AURZADA:  Yes, Your Honor.  Okay.  Thank you.

10            MR. ESCOBAR:  Judge, are you going to issue an order

11   with these dates or do we just --

12            THE COURT:  No, I'm not.  Today is the 4th -- let's

13   just make it part of the record -- today's the 4th, so two

14   weeks from today will be the 18th.  Is that a holiday?

15            MR. ESCOBAR:  I think the Monday is a holiday,

16   Judge.  I'm not sure about Monday.

17            THE COURT:  The 16th -- well, Monday the 23rd, is

18   that President's Day or something.

19            MR. ESCOBAR:  I believe so, Judge.

20            THE COURT:  Okay.  So the two weeks from today is

21   the 18th, that would be the extension of time for the person

22   seeking relief to file additional briefing.  And then two

23   weeks from that day, 25, and the 11th of March would be that

24   deadline for you, Mr. Escobar.

25            MR. ESCOBAR:  Yes, ma'am.

1          THE COURT:  Is that enough time?

2          MR. AURZADA:  It's fine for us, Your Honor.

3          MR. ESCOBAR:  It's fine for us.

4          THE COURT:  All right.  Thank you for appearing.

5   And I hope you're able to work out something.  That's the best

6   way of course.  All right.

7          MR. ESCOBAR:  Thank you, Your Honor.

8          THE COURT:  This hearing's adjourned.

9          MR. AURZADA:  Thank you, Your Honor.  May we be

10  excused?

11          THE COURT:  Yes.

12       (Proceedings adjourned at 11:36 a.m.)

13                          * * * * *

14       *I certify that the foregoing is a correct transcript*

15  *to the best of my ability from the electronic sound recording*

16  *of the proceedings in the above-entitled matter.*

17      */S./ MARY D. HENRY*

18  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

19  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337*

20  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

21  *JTT INVOICE #53526*

22  *DATE:  FEBRUARY 6, 2015*

23

24

25