# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § <br> § <br> APPLICATION OF GAZPROM LATIN § <br> AMERICA SERVICIOS, C.A., § <br> § <br> § MISC. ACTION NO. 4:14-mc-1186 <br> Applicant. § <br> § <br> § | |

**GAZPROM LATIN AMERICA SERVICIOS, C.A.'S**
**PROPOSED SUPPLEMENTAL REPLY**

Gazprom Latin America Servicios, C.A. ("Gazprom") submits this supplemental reply in response to Jean-Marc Pivert's supplemental memorandum in support of motion to vacate orders ("Memorandum") for the limited purpose of pointing out numerous intentional and material misstatements of fact in Mr. Pivert's Sworn Declaration, motion to vacate and hearing testimony so to avoid this Court's jurisdiction under 28 U.S.C. § 1782. In conformance with this Court's leave to Gazprom to file a reply as to Pivert's Memorandum, Gazprom states as follows:

**INTRODUCTION**

On March 11, 2015, Gazprom received Mr. Pivert's most recent filing in this case. The passage of time since the full briefing of the issues before this Court has led Gazprom to seek leave to bring to this Court's attention material inconsistencies contained in Mr. Pivert's submissions that indeed may be prompting obfuscation.

A brief comparison of Mr. Pivert's Memorandum to his previous filings, including to his declaration -- prepared under the penalty of perjury -- unequivocally demonstrates that Mr. Pivert has by design misled this Court so as to avoid its jurisdiction. Faced with the deposition testimony of his house sitter, Michael Drake, which without qualification demonstrates that Mr.

1

Pivert continually misrepresented material facts to this Court regarding his presence in the district, Mr. Pivert has retreated from his insupportable and incongruous positions, resorting instead to attacking Mr. Drake's first-hand knowledge of the facts, *without actually denying those facts*. Thus, the purpose of this submission is to attempt to elucidate the actual record before this Court in order to facilitate the expeditious administration of justice by underscoring (i) material inconsistencies in Mr. Pivert's papers and (ii) between Mr. Pivert's submissions and the deposition testimony of Mr. Drake, Mr. Pivert's house-sitter. [1]

Any assertions that Mr. Pivert is not a "resident" of the district or cannot be "found" in the district are simply false.[2] Accordingly, Mr. Pivert must be found in contempt based on the additional ground of having intentionally sought to deceive this Court.

Moreover, Mr. Pivert's personal exegesis of 28 U.S.C. §1782 is entirely misguided and without merit, itself bordering on sanctionable conduct.[3] Accordingly, a third Order compelling

---

[1] A true and correct copy of Mr. Drake's deposition transcript is here attached as Exhibit A.

[2] Mr. Pivert insists that Gazprom has "abandoned" its argument that Mr. Pivert "is found" in the district. [D.E. 29, at 8-9]. Nothing could be further from the truth. As a threshold matter, Gazprom incorporated the arguments in its previous filing by reference to its supplemental memorandum. [D.E. 28, fn. 1]. Moreover, following the deposition of Michael Drake, it became evident that not only did Mr. Pivert meet the lower standard for determining whether a respondent "is found" in the district, under the facts of this case, Mr. Pivert meets the higher "resident" standard. In the unlikely event that this Court finds that Mr. Pivert is not a resident, the facts provided in the supplemental memorandum, as well as in this supplemental reply, at the very least support a finding that Mr. Pivert "is found" in the district.

[3] It bears noting that Mr. Pivert improperly seeks to impose a higher standard for determining whether a respondent "is found" in the district than that for determining whether a respondent is a "resident" of the district. Mr. Pivert concedes in his Memorandum that "physical presence" and, therefore, "residence" can be "established through such facts as ownership of property, location of full-time employment, location of filing tax returns, and amount of time spent in the district." He goes onto to recognize that "[a]lthough no one factor is dispositive of the issue of residency, the factors determine [sic] of the issue all deal with some form of physical presence." *Id.* at 7-8. These factors that Mr. Pivert enumerates in his Memorandum are among the many factors that were established during Mr. Drake's deposition, as recited in Gazprom's supplemental response, which Mr. Pivert can no longer dispute. Mr. Pivert's argument, therefore, that personal service is required to support § 1782 jurisdiction is both erroneous and a *red herring*. Once physical presence has been established, as is the case here, no further analysis is required. Indeed, Mr. Pivert's physical presence in this jurisdiction is sufficient both quantitatively and qualitatively to support the more exacting constitutional due process standard for an exercise of *in personam* jurisdiction. Clearly, his presence is also sufficient to support the far less rigorous standard for § 1782 discovery in aid of a foreign proceeding.

2

attendance at the deposition and production of documents is warranted, as is a further Order holding Mr. Pivert in contempt for intentionally misleading this Court.

## ARGUMENT

### I. PIVERT HAS CONCEDED THAT HE RESIDES IN THE DISTRICT

The crux of Mr. Pivert's motion to vacate this Court's contempt orders is that this Court lacks 28 U.S.C. § 1782 jurisdiction over him because he is neither a "resident" of the district nor can he be "found" in the district. In his previous filings, including his Sworn Declaration, and during the hearing on his motion to vacate, Mr. Pivert insisted, without equivocation, that "he [has] never been a resident of Houston, Texas, Harris County, Texas, Montgomery County, Texas or any location within the Southern District of Texas, of the United States of America." *See* Sworn Statement of Jean-Marc Pivert attached as Exhibit B. In fact, Mr. Pivert insisted that he had only been to the United States twice in his entire life -- once from 1991 to 1994 when he was a student at the University of Louisiana and later from January to March 2013, as a "tourist" in Houston, Texas.[4] Following Mr. Drake's deposition, however, Mr. Pivert has done an about face.

Presented with the indisputable facts supporting his residency in the Southern District of Texas, Mr. Pivert has now turned his attention to attacking Mr. Drake's first-hand knowledge of the facts that conclusively establish Mr. Pivert's residency, but doing so without actually denying the facts as he previously did. Indeed, Mr. Pivert's Memorandum is significant not only in what it says, but also in what it does not say. Below are only a few examples of Mr. Pivert's most recent intentional, material misstatements and omissions to this Court.

---

[4] *See* infra, fn. 5.

### A. MATERIAL MISSTATEMENTS AND OMISSIONS

1. Unable to contest that Mr. Drake saw him "*living* in the [Skyflower Drive home in 2012] with his family" during a barbeque that Mr. Pivert hosted, after having "*moved to Houston*" to work for Lindsayca, Mr. Pivert now claims that he has not been to Houston "*since Spring 2013*" -- an extremely important and material distinction from his previous position wherein he claimed to have been in Houston only *once in January 2013* as a "tourist." [D.E. 29, at 9-10] (emphasis added); *see also* Michael Drake Deposition Tr., dated Feb. 13, 2015, P. 20, Lines 7-8, attached as Exhibit A (emphasis added). Grasping desperately at straws, Mr. Pivert has now resigned to arguing that Gazprom has failed to establish "how long [he] and his family may have stayed in [the] house" or provide "evidence from neighbors" to establish that he and his family lived in the Skyflower Drive home. *Id.* at 10. Of course, Mr. Pivert does not deny that he had a homestead exemption in 2012 or that the home is listed in public records as "owner occupied."[5]

2. Similarly, Mr. Pivert no longer denies, as he previously did, that he works out of his Houston office, and has altogether abandoned his position that he only received telephone calls and mail at his business address. [D.E.-16, at 6]. Rather, he now disingenuously contends that Mr. Drake never "*saw*" him in the office when Mr. Drake

---

[5] During the hearing on his motion to vacate, Mr. Pivert insisted on several occasions that he had only been to Texas once in 2013 and prior to that, he had not been to the United States since 1994. (*See e.g.,* Hearing Tr., dated Feb. 4, 2015, P. 12, Lines 5-7, attached as Exhibit C: "Mr. Pivert doesn't come to the United States. He hasn't been here for -- again, since March of 2013, and before that <u>he hadn't been here since 1994 as I understand</u>.")(Emphasis added); (*Id.* at P. 20, Lines 22-25: "Again, he hasn't come here since March -- he hasn't even been here in the Houston area since March of 2013, <u>and before that it was, what, 20 years before that that he was here</u>.")(Emphasis added).

was interning for Lindsayca from August 2014 to December 2014. [D.E.-29, at 12]. Once again, Mr. Pivert has refused to explain (i) why he maintains an office in Houston in the first place if he never worked there or (ii) contest Mr. Drake's statement that Mr. Pivert moved to Houston in 2012 expressly to work for Lindsayca or (iii) deny that he is the company's vice-president or (iv) that the company is headquartered in Houston. That is simply because there is only one obvious explanation for these facts -- Mr. Pivert resides and works in Houston.

3. Mr. Pivert also does not contest that he was a director of G. Energy Solutions and listed as the company's primary contact until February 2014. Instead he insists that the company was forfeited in May 2014 and that by stating that he was its primary contact, Gazprom really meant to say that Mr. Pivert was the "registered agent" for the company, when in fact he was not. *Id.* at 13. Gazprom has made no such assertion. As clearly demonstrated in the Texas Secretary of State records, the company's Houston mailing address is listed in "C/O of Jean-Marc Pivert," a fact which Mr. Pivert does not -- and cannot -- dispute. Mr. Pivert similarly does not dispute that G. Energy Solutions was headquartered in Houston.

4. Mr. Pivert also does not deny that his Skyflower Drive home was furnished when Mr. Drake took possession or explain why he would furnish an "investment property" for which he charges no rent and carries most of the expenses. Once again deflecting, Mr. Pivert claims only that Mr. Drake never testified as to "*how much furniture*" was actually in the home or provide "any information as to the *condition* of the house and furniture." *Id.* at 10.

5

5. In this same vein, Mr. Pivert provides no explanation whatsoever as to why he maintains a vehicle at his Skyflower Drive home that Mr. Drake, the purported sole resident in the home, is not authorized to use or why he nevertheless instructed Mr. Drake to turn the vehicle on periodically so as to "keep it running," if Mr. Pivert never travels or intends to return to his Skyflower Drive home. Missing the point entirely, Mr. Pivert instead insists that ownership of a vehicle in the United States does not establish residency, failing to recognize that his ownership of the vehicle is only *one* of many indisputable facts presented by Gazprom in support of his residency. *Id.*

6. Mr. Pivert likewise does not explain why the home's utilities were in his name or deny that he pays one-half of the utilities along with the pool maintenance and Internet fees. *Id.* He also does not dispute that he pays the property taxes on his Skyflower Drive home, clinging once again to the argument that Mr. Drake "does not know" whether Mr. Pivert pays the taxes. *Id.* at 3.

7. Still refusing to address how he learned of this Court's Orders when he supposedly never received any of the legal papers in this matter, Mr. Pivert contends that Mr. Drake "does not know" whether Mr. Pivert actually received any of the legal papers delivered to his home. *Id.* Once again, Mr. Pivert no longer maintains that he never received any of the legal papers. Notably, he also does not deny that he receives mail at his Skyflower Drive home or explain why he never changed his mailing address, insisting instead that Gazprom has failed to establish what *kind* of mail he receives

there. *Id.* at 11. He also does not dispute that his Lindsayca colleague picked up the legal papers for delivery to Mr. Pivert.[6]

The above factors, when examined *in toto,* are not only sufficient to meet the liberal § 1782 discovery standard, they constitute the kind of continuous and systematic contacts sufficient to satisfy constitutional due process -- a burden that Gazprom is not required to but nevertheless meets. Mr. Pivert's Memorandum is nothing more than a last-ditch attempt to avoid this Court's jurisdiction. His motion to vacate should be denied.

## II. 28 U.S.C. § 1782 DOES NOT REQUIRE PERSONAL SERVICE

With no other viable option left, Mr. Pivert erroneously insists that this Court cannot exercise jurisdiction over him because he was not "personally served" in the district. It bears underscoring that contrary to Mr. Pivert's continued assertions, the test for determining whether a person "resides" or "is found" in the district is not personal service. Courts have expressly rejected the temporal limitations Mr. Pivert proposes and when considering what it means to "reside or be found" for purposes of 28 U.S.C. § 1782, have held, as determinative, factors such as (i) where the respondent lives, (ii) ownership or rental of real property within the district, (iii) location of full-time employment, and (iv) the filing of tax returns, *See In re Edelman,* 295 F.3d at 178; *In re Godfrey,* 526 F. Supp. 2d 417 (S.D.N.Y. 2007) (considering respondents' respective places of residence, visits to the district, and ownership of property in the district). Put simply, the workings of 28 U.S.C. § 1782 are not those of "tag jurisdiction." As demonstrated above, as well as in Gazprom's previous filings, Mr. Pivert overwhelmingly meets these requirements.

---

[6] During the hearing on his motion to vacate, Mr. Pivert expressly admitted that he "found out about the court's orders, then he hired [counsel], and of course. . . filed a motion to vacate the orders." Hearing Tr., dated Feb. 4, 2015, P. 7, Lines 22-25, attached as Exhibit C. He then directly contradicted himself during that same hearing, stating that "he never received any of the motions, he didn't receive any of the Court's orders." *Id.* at P. 12, Lines 10-12.

There can be no doubt that Mr. Pivert resides in the district, or at the very least, "is found" in the district. His motion to vacate should be denied.

## CONCLUSION

Based on the foregoing argument and authority, Gazprom respectfully requests that (i) the Court issue an order denying Mr. Pivert's motion to vacate the Orders of May 19, 2014, and August 5, 2014, and (ii) for other and further relief as the Court deems appropriate under the circumstances.

Dated: April 28, 2015

Respectfully submitted,

**BRYAN CAVE LLP**
/s/ *Pedro J. Martinez-Fraga*
Pedro J. Martinez-Fraga (admitted *pro hac vice*)
  Florida Bar No. 752282
Email: pedro.martinezfraga@bryancave.com
Tania Cruz (admitted *pro hac vice*)
  Florida Bar No. 0899151
Email: tania.cruz@bryancave.com
200 South Biscayne Blvd., Suite 400
Miami, FL 33131

Keith M. Aurzada
  Texas Bar No. 24009880
  Southern District Bar No. 24728
2200 Ross Avenue, Suite 3300
Dallas, TX 75201
Telephone: 214.721.8000
Facsimile: 214.721.8100
Email: keith.aurzada@bryancave.com

**ATTORNEYS FOR GAZPROM LATIN AMERICA SERVICIOS, C.A.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2015, a copy of the foregoing was served in compliance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas electronically via the Court's CM/ECF filing system and via certified mail, return receipt requested, to the following:

| | |
|---|---|
| Manuel G. Escobar, Jr.<br>201 W. Poplar<br>San Antonio, TX 78212 | Michael Maldonado<br>THE MALDONADO LAW FIRM<br>715 Artesian<br>Corpus Christi, TX 78401 |
| **Attorney for respondent Jean-Marc Pivert** | **Attorney for respondent Lindsayca, Inc.** |

                                        _____/s/ Pedro J. Martinez-Fraga_____

                                        Pedro J. Martinez-Fraga