United States District Court
Southern District of Texas

**ENTERED**

July 06, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| APPLICATION OF GAZPROM LATIN | § | |
| AMERICA SERVICIOS, C.A., | § | MISC. ACTION NO. 4:14-mc-1186 |
| | § | |
| Applicant. | § | |

**MEMORANDUM AND ORDER OF DISMISSAL**

The above referenced *ex parte* Application of Petitioner Gazprom Latin America Servicios, C.A. ("Gazprom") for Assistance pursuant to 28 U.S.C. § 1782[1] seeks to compel personal testimony

---

[1] Section 1782(a), titled "Assistance to foreign and international tribunals and to litigants before such tribunals," provides,

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure which may be in whole or in part the practice and procedure of the foreign country or international tribunal for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

-1-

and production of documents from Respondents Lindsayca, Inc.[2] and Jean-Marc Pivert ("Pivert"), both purportedly located in the Southern District of Texas and residents of Texas.   Gazprom represents that the discovery sought is to assist the Twelfth Court

---

       A person may not be compelled to give his testimony or statement to produce a document or other thing in violation of any legally applicable privilege.

An entity qualifies as a "tribunal" within the meaning of § 1782 when it acts in an adjudicative capacity. *See, e.g., In re Request for Int'l Judicial Assistance (Letters Rogatory) for the Federative Republic of Brazil,* 936 F.2d 702, 705 (2d Cir. 1991)(the choice of the word "tribunal" evidences Congressional intent "to confine assistance to those proceedings in which an adjudicative function is being exercised").   The Fifth Circuit has held, however, that the term "tribunal" within the meaning of § 1782 does not include international private arbitral tribunals. *Republic of Kazakhstan v. Biedermann International*, 168 F.3d 880, 881-83 (5th Cir. 1999); *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 Fed. Appx. 31, 33-34 (5th Cir. Aug. 6, 2013); *in accord, National Broadcasting Co.; Inc. v. Bear Stearns & Co.*, 165 F.3d 184, 185, 190-91 (2d Cir. 1999)(holding that § 1782 does not include a private international commercial (ICC) arbitration, but only "governmental or intergovernmental arbitral tribunals and conventional courts and other state-sponsored adjudicatory bodies.").

     An "interested party" clearly includes parties to a foreign proceeding.   As will be discussed, Gazprom is the defendant in Lindsay C.A.'s ("Lindsay's") underlying suit in the Venezuelan court in a construction contract dispute that relates to Gazprom's potential claims against Jean-Marc Pivert. *See, e.g., In re Esses*, 101 F.3d 873, 875 (2d Cir. 1996), citing S. Rep. No. 1580, 88th Cong., 2d Sess. at 8 (1964).

     The proceeding for which discovery is sought does not need to be pending or imminent, but only within "reasonable contemplation" at the time that the request for assistance is made. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

---

    [2] Gazprom claims that Lindsayca, Inc. is a subsidiary of Lindsay, C.A. ("Lindsay"), a Venezuelan corporation.

of First Instance in Civil, Commercial, Transit and Banking Matters for the Judicial District of the Metropolitan Area of Caracas, Venezuela (the "Venezuelan Court") in a pending dispute and an ancillary seizure case, which in part is related to alleged nonpayment to Lindsayca, C.A. by Gazprom of a $8,781,196.75 invoice, plus interest and legal fees, in connection with a service contract for the construction and installation of a $43 million natural gas compression plant for Gazprom in Venezuela.[3]  Pending

---

[3] The underlying action arose out of a contract between Gazprom and Lindsay to construct and install a natural gas compression plant for Gazprom in Venezuela.  The instant proceeding seeking discovery here in the Southern District of Texas in anticipation of a potential independent action against Pivert, is related to a complaint filed in the underlying action by Lindsay against Gazprom in the Venezuelan Court on November 7, 2013, seeking to recover for a purportedly partially unpaid invoice.  Ex. A, Lindsay's Complaint with Ex. B, a certified English translation.  In that suit Gazprom challenged the Venezuelan Court's subject matter jurisdiction based on a venue provision in the contract between Lindsay and Gazprom.  Ex. B. In an ancillary proceeding Lindsay has sought a court order for seizure of assets against Gazprom, which under Venezuelan procedural rules, had to be brought as a separate case despite its ties to the main suit. Here, too, Gazprom challenged the Venezuelan Court's subject matter jurisdiction to order such seizure and also argued that such seizure would be against public policy. (Gazprom contends that "the public policy of Venezuela accords special status to oil and natural gas because they are deemed to be strategic resources upon which a considerable part of the Venezuelan economy is premised."  Gazprom's memorandum in support of its application for assistance, #3 at p.3).  Gazprom insists that it does not owe Lindsay any payments and that Lindsay over-invoiced and underperformed throughout the plant's construction and that Gazprom overpaid Lindsay for services that were never approved, not provided or performed below industry and contractual standards.  Gazprom also claims that the performance of the contract was "riddled with indicia of fraudulent conduct" in "a systematic scheme to bilk Gazprom in favor of Lindsay and certain individual formerly with Gazprom."  #3 at pp. 6, 5.

before the Court are (1) Respondent Jean-Marc Pivert's ("Pivert's")
motion to vacate orders (instrument #16 as it relates to #7), (2)
United States Magistrate Judge Frances Stacy's recommendation
(instrument #46) that this Court grant Pivert's motion (#16) to
vacate #7; (3) Gazprom's objections (#49) to the Magistrate Judge's
Recommendation (#46); and (4) Pivert's response (#51) to the
Magistrate Judge's recommendation.

### Standard of Review

Nondispositive and dispositive motions may be referred to the
magistrate judge for a memorandum and recommendation under 28
U.S.C. section (b)(1) and Fed. R. Civ. P. 72.   Title 28 U.S.C. §
636(b)(1) provides,

> (A) A judge may designate a magistrate judge to hear and
> determine any pretrial matter pending before the court,
> except a motion for injunctive relief, for judgment on
> the pleadings, for summary judgment, to dismiss or quash
> an indictment or information made by the defendant, to
> suppress evidence in a criminal case, to dismiss or to
> permit maintenance of a class action, to dismiss for
> failure to state a claim upon which relief can be
> granted, and to involuntarily dismiss an action.  A judge
> of the court may reconsider any pretrial matter under

---

Furthermore Gazprom claims that Pivert, Respondent in the
proceeding before this Court, was formerly Gazprom's General
Manager for a year, supervising performance under Gazprom's
contract with Lindsay, while Pivert allegedly was simultaneously
employed by, or receiving benefits from, "Lindsayca, Inc.
(formerly known as Lindsayca USA, Inc., . . . a Texas corporation
(#1, p.2, ¶2)." During this time, alleges Gazprom, Pivert used
his "apparent authority" as a senior Gazprom official to obtain
unjustified benefits, to Gazprom's detriment.   Thus Gazprom seeks
discovery from Lindsayca and Pivert about Pivert's use of his
apparent authority as a senior Gazprom official to wrongfully
deprive Gazprom of its financial resources.

-4-

this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate judge to conduct hearings including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

Similarly, nondispositive matters may be referred to the magistrate judge under Rule 73(a), and dispositive motions, under Rule 72(b).

Objections to a magistrate judge's memorandum and recommendation must specifically identify the findings or recommendations for which the party seeks reconsideration. *Byars v. Stephens*, No. 5:13-CV-189-DAE, 2014 WL 1668488, at *2 (Apr. 14, 2014), *citing Thomas v. Arn*, 474 U.S. 140, 151 (1985). The court does not have to consider "'[frivolous, conclusive, or general objections.'" *Id., citing Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A determination by a magistrate judge to which the party specifically objects regarding a dispositive matter must be reviewed *de novo* under 28 U.S.C. § 636(b)(1)(c). The Magistrate Judges's decision about a nondispositive matter is reviewed under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a)("The district judge . . . must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law."). Findings to which no specific objections are made require that the Court only to decide

whether the memorandum and recommendation is clearly erroneous or contrary to law. *Id., citing U.S. v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Under this deferential standard of review the court must affirm the magistrate judge's description unless it finds that based on all the evidence it is "left with a definite and firm conviction that a mistake has been committed." *Baylor Health Care Sys. v. Equitable Plan Services, Inc.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013), *quoting U.S. v. Gypsum Co.*, 333 U.S. 364, 395 (1948). The district court reviews the magistrate judge's legal conclusions *de novo*. *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996); *Tolan v. Cotton*, H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015). In the "vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous," the standard of review is abuse of discretion. *Lahr*, 164 F.R.D. at 208; *Bancroft Life & Cas. ICC, Ltd. v. FFD Resources II, LLC*, 884 F. Supp. 2d 535, 537-38 (S.D. Tex. 2012). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

"'[I]t is neither uncommon nor improper for district courts to

grant *ex parte* applications made pursuant to § 1782.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3).'" *In re Application of Eurasian Bank Joint Stock Company for Expedited Judicial Assistance Pursuant to 28 U.S.C. § 1782*, No. 3:15-mc-106-K-BN, 2015 WL 6438256, at *1 (N.D. Tex. Oct. 21, 2015), *citing Gushlak v. Gushlak*, 486 Fed. Appx. 215 (2d Cir. July 3, 2012).  Before the court may grant relief under 28 U.S.C. § 1782, as the first step the petitioner must satisfy the statutory jurisdictional requirements:  "(1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or ''any interested person.''"  *Bravo Express Corp. v. Total Petrochemicals & Refining USA, Inc.*, 613 Fed. Appx. 319, 322 (5th Cir. June 2, 2015), *citing Tex. Keystone v. Prime Natural Res., Inc.*, 694 F.3d 548, 553 (5th Cir. 2012)("Section 1782 allows an interested party . . . to obtain discovery related to the foreign proceeding where the source of the discovery can be found within the jurisdiction of the district court.").  Nevertheless a person "may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1762;

*In re Application of Chevron Corp.*, Misc. No. H-10-134, 2010 WL 2038826, at *1 (S.D. Tex. May 20, 2010).  Even if the interested party satisfies these three requirements, the court, with a view to the two goals of the statute, i.e. "'to provide efficient means of assistance to participants in international litigation in our federal courts and to encourage foreign countries by example to provide similar means of assistance to our courts,'" the court still has discretion whether to grant the application.  *Texas Keystone*, 694 F.3d at 553-54, *citing In re Ishihara Chem Co*. 251 F.3d 120, 124 (2d Cir. 2001), *abrogated on other grounds by Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

Once the jurisdictional requirements are met, in the second step, a district court again is not required to grant a § 1782(a) discovery application simply because it has the authority to do so," but it should consider four factors established in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), to guide it in deciding whether to exercise its discretion:  (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach" and therefore their evidence, "available in the United States," may be "unobtainable absent § 1782(a) aid"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government,

court, or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the § 1782(a) request is "unduly intrusive or burdensome." *Bravo Express*, 613 Fed. Appx. at 323-24, *citing Intel Corp.*, 542 U.S. at 264-65.

A number of courts receiving requests to conduct discovery for use in a foreign proceeding have read into § 1782 an initial requirement that the material sought must be located in the United States and that witnesses cannot be compelled to produce documents located outside of this country. *In re Application Pursuant to 28 U.S.C. § 1782 for Discovery from Slawomir Laczor*, No. 1:14-mc-44, 2014 WL 4181618, at *3 (S.D. Ohio Aug. 31, 2014)(and cases cited therein), *citing inter alia In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007)(the statute's legislative history establishes that § 1782 "was intended to aid in obtaining oral and documentary evidence in the United States . . . and was not intended to provide discovery of evidence maintain[ed] within a foreign district").

The Federal Rules of Civil Procedure govern discovery requests after the district court grants a § 1782 application, thus allowing foreign litigants to obtain discovery in the United States. *Texas Keystone,* 694 F.3d at 554(and cases cited therein).

### Summary of the Litigation

To address the pending matters, the Court must summarize the history of the litigation to this point.

Neither the corporation (Lindsayca) nor the individual (Pivert) from whom the discovery is sought herein are parties to the proceedings in the Venezuelan Court, but Gazprom is an interested party/named defendant in that action brought by Lindsay. Gazprom maintains that the requested discovery is necessary for the Venezuelan court to administer justice, while Gazprom needs it to support its affirmative defenses, defenses, compulsory and permissible counterclaims (such as breach of contract, conversion, civil theft, breach of fiduciary duty, negligent misrepresentation, unjust enrichment, fraud in the inducement, and fraud in the execution), and a potential, independent action against Pivert in Venezuela or Pivert's joinder in the Venezuelan Court proceeding. The Venezuelan Court, in turn, according to Gazprom, requires the discovery to help it determine jurisdiction and to segregate potential judicial and arbitral claims and parties.

Initially this Court granted Gazprom's *ex parte* request for assistance and ordered Pivert and a corporate officer of Lindsayca to produce documents and appear for videotaped depositions within thirty days (#7). Pivert failed to comply with the document request and to appear for his deposition despite notice allegedly having been hand delivered to Pivert on June 16, 2014 at his purported residence at 38 Skyflower Drive, Spring, Texas. Gazprom

then filed a first and a second motion to compel, for contempt, and for sanctions (#10 and 13), which the Court referred to United States Magistrate Judge Frances Stacy.  On August 5, 2014 (#15), Magistrate Judge Stacy granted Gazprom's two motions and ordered Pivert to appear for his deposition on a date and at a location  in this district to be selected and noticed by Gazprom.  She also ordered Pivert to pay reasonable expenses, including attorney's fees, to Gazprom, which Gazprom had incurred up till then in seeking Pivert's deposition.  Furthermore she expressly ordered, "Gazprom shall serve this Order and a deposition notice on Pivert by e-mail, by certified mail, and by hand delivery. *Any failure by Jean-Marc Pivert to appear or his deposition may result in a warrant being issued for his arrest.*"  #15 at p.2.

Subsequently counsel for Pivert made an appearance and, on Pivert's behalf, filed a motion to vacate (#16) both this Court's order granting Gazprom's request for assistance and the Magistrate Judge's order granting Gazprom's two motions for contempt.  Pivert argued that he did not reside in this district at the time the Court granted the request for § 1782 motion for assistance, did not receive notice of the motions and deposition nor the Court's and the Magistrate's orders, has not resided here since the order issued, indeed has not been in this district since early March 2013, at which time he averred in a sworn statement that he had

been here for three months as a tourist,[4] and thus could not be "found" here within the meaning of the statute since long before Gazprom applied for assistance under §1782(a)(all requisite statutory elements for assistance under § 1782).   The Court referred the opposed motion to vacate to the Magistrate Judge, who addressed it at a hearing on February 4, 2015 (transcript #24).   At that hearing counsel for Pivert appeared and represented, with supporting affidavits attached to his reply (#18) in support of his motion to vacate, that Pivert has been in Venezuela during the entire proceedings, that the Lindsayca corporation in Texas[5] had forfeited its existence a year ago and that the underlying litigation in Venezuela has settled and even been dismissed, so there currently is no pending litigation in Venezuela for which the requested discovery is needed.   #24 at pp. 5-6, 10, 8, 13.   With

---

[4] See #27, Ex. A, Pivert's Sworn Statement.

[5] According to Pivert's attorney, originally there were two Lindsayca organizations, one in Houston, Texas, now defunct, and one in Venezuela where Pivert did work and currently works. #43, p. 9, ll. 13-20; p. 21, l.17-p. 22, l.3.
     The Court notes that Gazprom submits evidence (#27 at p. 16 and Ex. G) that in April 2012, Pivert formed another company under the laws of the State of Texas, called G. Energy Solutions, which had the same address as that of the Texas branch of Lindsayca (14350 Chrisman Road), and whose charter was also forfeited on Feb. 21, 2014, three months before Gazprom filed its § 1782 application.   Gazprom does not state nor provide any evidence as to where Pivert was living when he formed the company.
     The evidence does show that Pivert has not been in Texas since early March 2013 and that any correspondence sent to him at Lindscaya's address in Houston, Texas (14350 Chrisman Road), was forwarded to him in Venezuela.

the Court's agreement, each side then filed supplemental briefs
(#27 (Gazprom), #29 (Pivert), #34 Exs. A, B, and C (Gazprom), #41
(Pivert)).  During the time for supplemental briefing Gazprom also
took the deposition of Michael Drake, who has been living in the
Skyflower house.  Transcript at #27-3.  Magistrate Judge Stacy held
a second hearing on August 26, 2015 (transcript #43), after which
she issued an order (#46 at p. 4), finding that the evidence showed
the following:

> (1) Pivert is a French citizen; (2) at the time Gazprom's
> § 1782 application was filed, Pivert resided and worked
> in Venezuela; (3) Pivert owns a house, located at 38
> Skyflower Drive, Spring, Texas, and pays taxes on that
> property; (4) Pivert has not been to the Skyflower Drive
> residence, and has not been to the United States, since
> March 2013; and (5) Pivert did not, at the time Gazprom's
> application was filed, or at any time thereafter, work
> from the address (14350 Chrisman Road, Houston Texas)
> listed on an undated business card bearing Pivert's name.
> The evidence also shows that at the time Gazprom's
> application was filed and thereafter, Michael Drake--the
> son of one of Pivert's friends, lived at the Skyflower
> Drive address.  There is no evidence that Michael Drake
> is, or has ever been, Pivert's agent for any purpose and,
> in fact, evidence is to the contrary.

Moreover, finding that none of Gazprom's legal authority[6] supports

---

[6] Specifically Gazprom cited and the Magistrate Judge
discussed *In re Edelman*, 295 F.3d 171 (2d Cir. 2001), and *In re
Godfrey*, 526 F. Supp. 2d 417 (S.D.N.Y. 2007).  The Magistrate
Judge correctly concluded that the holding in *Edelman*, 295 F.3d
at 179, with *Godfrey* in accord, 526 F. Supp. 2d at 421-22, is
that a person is "found" in a jurisdiction for purposes of
foreign discovery under § 1782(a) if he is personally served
while physically present in the jurisdiction.  There is no
evidence that Pivert was personally served while in Texas;
instead the evidence shows that he was not.  She is also correct
in finding from the evidence that as a matter of law Pivert did
not "reside" in this Court's jurisdiction at the time that

its claim that Pivert's ownership interest in real property located in this district and his payment of taxes on it was sufficient to prove Pivert can be "found" in this district, and because Pivert was not personally served in this district with any of the filings in this case, Magistrate Stacy granted Pivert's motion to vacate her May 19, 2014 order and recommended to this Court that Pivert's motion to vacate (#16) this Court's order (#7) granting Applicant's request for assistance under § 1782 be granted.  #46, citing *Bravo Express*, 613 Fed. Appx. at 323-24, for the four factors that are to guide a district court's exercise of its discretion, the second step in the § 1782(a) inquiry, established in *Intel Corp.*, 542 U.S. at 264-65, which in this proceeding she determined weighed in favor of denying the discovery Gazprom seeks from Pivert.  Magistrate Stacy found that Pivert is a French citizen residing at all relevant times in Venezuela, where Pivert can be "found" and where Gazprom is headquartered and located.  The information Gazprom seeks from Pivert deals with services relating to "the construction and installation of a natural gas compression plant in Venezuela" and Pivert's role regarding it.  Gazprom failed to show that any information or evidence relating to it is located in this district or in the United States as a whole.  Nor has it shown or argued

---

Gazprom filed its application pursuant to § 1782.  Drake's testimony and Pivert's testimony demonstrate that Pivert resides in Venezuela and that there is no showing that he has been to this district since early 2013.

that "proof gathering" could not be done in Venezuela under the direction of an appropriate Venezuelan tribunal.

### Gazprom's Objections (#49) to #46

Gazprom objects that the Magistrate Judge's order overturning her contempt order and recommending that the Court grant Pivert's motion to vacate is "legally flawed," "applies an improper newly minted *domiciliary* standard for § 1782 residency," and "is devoid of any meaningful analysis, merely regurgitating Mr. Pivert's baseless arguments, while ignoring evidence establishing that Mr. Pivert has materially misrepresented the extent of his actual presence in this district so as to avoid this Court's jurisdiction."  #49 at p.2.

Insisting on a broad and expansive interpretation of the statute's terms, Gazprom asserts that "[t]he statute does *not* require an individual to be physically present at the precise time a discovery order issues or that an individual be personally served in this district."  *Id.*  Gazprom claims that although the statute originally required a person to "reside" in the district, in 1949 Congress amended it by striking out the word "residing" and allowing federal courts to authorize the deposition of "any witness within the United States."  *In Application of Edelman*, 295 F.3d 171, 180 (2d Cir. 2002)("According to the House Report on the amendment, the change was intended to 'correct[] restrictive language in section 1782 . . . and permit[] depositions in any

judicial proceeding without regard to whether the deponent is 'residing' in the district *or only sojourning there.*' By definition, a sojourn is 'a temporary stay' as of a traveler in a foreign country.'")(citing H.R. Rep. No. 81-352, at 40 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1254, 1270(emphasis added) and *Webster's Third New International Dictionary* 2166-67 (Philip Babcock Gove, ed. 1981).[7] Moreover maintains Gazprom, one can have only one domicile, given its requirements of permanency and continuity, but many residences. *Stone v. Phillips*, 171 S.W. 2d

---

[7] Gazprom ignores *Edelman*'s discussion of the elements of § 1782(a), in particular "(1) that the person from whom discovery is sought reside (*or be found*) in the district of the district court to which the application is made," and the Second Circuit's clear distinction between testimonial evidence by an individual, which is subject to the geographical limitation, and documentary evidence, which may be reached anywhere in the United States under § 1782(a).  295 F.3d at 175-77.  "Common sense makes us think that documents are maintained in a particular place, but the same is not true for individuals.  What a person will testify to is located where that person is found." *Id.* at 177.  *Edelman* held that physical presence in the district, even if temporary, is sufficient for a court to order a person to give testimony. The panel also noted that Federal Rule of Civil Procedure 45 (permitting federal district court to issue a subpoena for service on non-party witnesses located within its judicial district or "within 100 miles of where the person resides, is employed or regularly transacts business in person") protects a nonparty from expending time and money, annoyance, embarrassment, oppression or undue burdensome travel.  *Id.* at 178.

In *Edelman*, Taittinger, a French citizen, was personally served with a subpoena during a visit to New York after an § 1782 application had been filed there and a court order had issued for the taking of various depositions.  Taittinger was not on that list, but the court, while conceding he was not a resident, ruled that he was "found" in the Southern District of New York for purposes of the statute, but remanded the case to the lower court to determine whether the taking of his testimony was barred by the 100-mile limit under Rule 45.

156, 159 (Tex. Civ. App.--Amarillo 1943).[8]  Pivert may have shown

he is not domiciled in this district, but he has provided no

evidence that he is no longer a resident, according to Gazprom.

Contending that the Magistrate Judge's recommendation is an

abuse of her discretion, which is not "boundless" under § 1782,

Gazprom argues,

> Under [the Magistrate Judge's and Pivert's] proposed rubric a
> court could exert jurisdiction over one, who with no ties to
> the district enters the district, however briefly and
> inconsequentially, while nevertheless forbidding it as to

_____

[8] The Court observes that *Stone* is not a case brought under
§ 1782 and does not address the meanings of these terms under
that statute, nor do any of Gazprom's other cited cases except
for *In re Application of Oxus Gold PLC*, No. Misc. 06-82, 2006 WL
2927615 (D.N.J. Oct. 11, 2006). In *Oxus Gold, id.* at *5, the
court opined that a person "can have more than one residence,
given that the elements of permanency and continuity are not
necessary to a finding of residence."  Applying a contacts
analysis, the New Jersey district court observed that courts look
to "the location of a spouse or children, (2) ownership of
property, (3) location of filing for tax purposes, (4) the amount
of time spent in the United States, and (5) location of full time
employment."  It found that the Respondent presently lives in and
is employed in Moscow, but had sufficient contacts with New
Jersey to be considered a resident (leases a residential
apartment in New Jersey, is registered to vote in New Jersey,
maintains regular doctor appointments with his physician here,
and travels to New Jersey at least two months every year to
vacation and visit his family." *Id.*  Significantly, the court
chose not to decide whether the Respondent was a "resident"
because he was admittedly present and can "found" in New Jersey
on a consistent basis every year within the meaning of § 1782.
    This Court notes that the evidence in the instant case for
both residency and being found is far less that in *Oxus Gold.*
Pivert and his family are full-time residents of Venezuela and
have not be in this district since 2013, when they were here for
a short time, Pivert is employed full time in Venezuela, and does
not vote here nor has he returned for doctor's appointments or
any other reason; nor can he be found here "on a consistent
basis" every year.

another, like Mr. Pivert, who has maintained a continuous material presence in the district and availed himself of its protections but was not *physically* present at the *precise* moment that the Order granting discovery was issued.  Such temporal limitations make little sense and are (i) antithetical to Congress' "twin aims of 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . ." and (ii) have been expressly rejected by federal courts.

*Id.* at pp. 2-3.

Gazprom submits copies of the letter and notices of Pivert's deposition on September 3, 2014 that Gazprom sent to Pivert, with proof that they were sent by certified mail return receipt requested, U.S. mail, and hand delivery to his Skyflower house, but not that they were received by Pivert.  Gazprom objects that only on the afternoon of September 2, 2014, less than twenty-four hours before Pivert's noticed deposition, did Pivert's attorney inform Gazprom's attorney that Pivert would not appear and file Pivert's motion to vacate the May 9, 2014 and August 5, 2014 orders.  The motion to vacate argued that the Court lacked jurisdiction under § 1782 because Pivert did not reside in, nor could he be found in, the district and that he had never received Gazprom's notice of deposition.  Gazprom highlights a business card[9] it produced

---

[9] Copy found at #27, Ex. F.  In a sworn statement, #27, Ex. A, Pivert stated regarding the business card (#27-6, Ex. F),

I am informed that Gazprom Latin American Servicos, C.A. provided the Court with a business card which lists my business address as 14350 Chrisman Rd., Houston, Texas and my telephone number as 714-467-9570.

listing Pivert as Vice President of Lindsayca USA, a corporation
formed under the laws of the State of Texas and headquartered in
this district (with its Houston address at 14350 Chrisman Rd.), and
Pivert's sworn statement (#27, Ex. A at p.1) that he had "*never*
been a resident*" of any location in the Southern District of Texas
and had "not used the 14350 Chrisman address for any purpose since
March 2013." *Id.* at p.2.  Pivert responded that he only used the
Lindsayca Texas branch's address to receive correspondence and
telephone calls, which were forwarded to him in Venezuela.  Gazprom
also points out that in April 2012 Pivert formed G. Energy
Solutions, with its principal place of business at the same address
as Lindsayca, and he is listed in records of the Texas Secretary of
State as the company's contact and as one of three directors.

Gazprom argues that Michael Drake's declaration, submitted by
Pivert (exhibit attached to #16), undermines Pivert's statement
that he had "*never* been a resident of Houston, Texas [#16, Ex.
1]."[10]

---

This address was used to receive correspondence,
packages and other such items.  When an item was
received at this address, it was forwarded to me to
Venezuela.  Furthermore, if I received phone calls at
the above telephone number, those calls were forwarded
to me to Venezuela.  I have not used the 14350 Chrisman
Rd., Houston, Texas address for any purpose since March
2013.

[10] In his sworn statement (#27, Ex. A), Pivert stated,

I am a French citizen.  I reside in the city of Puerto
La Cruz, Republic of Venezuela, and have resided in

Gazprom highlights the fact that Pivert claims he never received any of the legal papers in this action, but he fails to explain how he learned of Gazprom's Application and the Court's orders.

Gazprom further argues that the Magistrate's discussion of the *Intel* discretionary factors is "devoid of any meaningful analysis" with "little or no correlation to the requisite factors."  #49 at p. 31.  It insists that the factors weigh heavily in favor of denying Pivert's motion to vacate Gazprom's application because Gazprom has shown that Pivert is not a participant in the foreign proceeding, that Venezuela would be receptive to this Court's judicial assistance in permitting Gazprom discovery in the United States, that Gazprom is not seeking to conceal or circumvent Venezuela's proof-gathering restrictions, and that the information it seeks is not unduly intrusive or burdensome.

Gazprom further objects as a matter of law to the Magistrate

_____

Venezuela from 2001 to the present date.  I have never been a resident of Houston, Texas, Harris County, Texas, Montgomery County, Texas or any location within the Southern District of Texas, of the United States of America.  I have never been a resident of any location within the United States of America.  I have never been a resident of any locale within the United States of America, except for a period of time I attended Louisiana State University from 1991 to 1994.  During that period of time, I lived in the United States on a student visa.  Furthermore, my last trip to Houston, Texas in January, 2013 as a tourist.  I remained in Houston Texas area for approximately three (3) months. I left the Houston, Texas area in March 2013, and have not returned since.

Judge's determination that it was required to show that the
documents or evidence is located in this district to satisfy the
*Intel* discretionary factors.

Pivert subsequently filed an affidavit from Drake on October
2, 2014 (#18, Exhibit 2), stating that Drake had resided at the
Skyflower Drive address since May 2014, that Pivert had not resided
there while Drake lived there, that Drake knew Pivert only
minimally and only through his father, who was a close friend of
Pivert, and that Pivert resides in Venezuela.  He further stated
that during the summer of 2014 a man came to the house with an
envelope or package for Pivert and told Drake that if Drake took it
for Pivert, he "was only acknowledging that the envelope had been
dropped off" by the man.  #18, Ex. 2.  Drake averred that he never
had been authorized by Pivert to receive any document on his
behalf.  *Id.*  Judge Stacy had another hearing on February 4, 2015
to address Pivert's motion to vacate, suggested that Pivert might
be deposed in Venezuela, and then permitted the parties to submit
additional briefing.

During that supplemental briefing period, Gazprom deposed
Michael Drake on February 15, 2015 and filed a supplemental brief
(#27).  Copies of Transcript found at #27-3 and at #49, Ex. J.
Drake's testimony, argues Gazprom, "materially undercut[] Mr.
Pivert's Sworn Statement that he has never resided or worked in the
district."  Drake testified *inter alia* that Pivert moved to Houston

in 2011 or 2012, that he was working at the Houston headquarters of
Lindsayca in 2012 and lived with his family at the Skyflower Drive
address, that currently Drake was house sitting and did not pay
rent to Pivert, that he paid for his expenses (electricity,
internet) but Pivert paid for everything else including utilities,
pool cleaning and maintenance, and most house repairs, that Pivert
owned a vehicle kept at the house which Drake was instructed to
turn on now and then, but did not drive, that mail for Pivert
arrived regularly, presumably including the legal documents sent by
Gazprom to Pivert, which Drake would stack up on a table, and in a
couple of months was ultimately given to Mr. Jorge Santos,
Lindsayca's president, who presumably forwarded it to Pivert in
Venezuela. (There is no evidence the Pivert received the mail, or
if so when.)  Drake also testified that he worked as an intern at
the Lindsayca branch at14350 Chrisman Road in Houston, Texas, that
he never saw Pivert at that location, nor was there an office there
with Pivert's name on it, and he did not know if Pivert had ever
been there.  Drake also mention that "a guy" came to the house two
or three times to deliver a package for Pivert that he was not
authorized to open.  Pivert subsequently filed a response (#29) to
Gazprom's supplemental reply, and Gazprom filed a supplemental
reply (#41) pointing out inconsistencies in Pivert's filings.

On December 22, 2015, the magistrate judge issued her order
(#46), vacating #5 and recommending that this Court vacate #16 and

deny Gazprom's application for assistance under § 1782(a) "on the basis (i) that [Pivert] did not 'reside' or could not be 'found' in the district because he was not physically present at the *precise* time the May 19, 2014 Order was issued, (ii) that Gazprom had failed to personally serve Mr. Pivert with the August 5, 2014 Order and (iii) that Gazprom had failed to satisfy the *Intel* discretionary factors." #49 at p.11.

### Pivert's response (#51)

Pivert highlights the fact that Gazprom has provided no evidence that it personally served him in this district as ordered by Magistrate Judge Stacy (#16) with any of the legal documents from Gazprom or from its attorneys and that they could not have because Pivert did not reside in nor could be found in this district at any time after Gazprom filed its application.  His ownership of property does not constitute residing in this district.  Nor does his ownership of the vehicle that Drake turned on regularly to keep it running and which would not have to be turned on and off were Pivert a resident in the district.  Gazprom fails to provide any evidence about the nature of mail received and stacked by Drake at the Skyflower property and only once given to a Lindsayca officer for possible, but unproven, delivery to Pivert in Venezuela.  In contrast to Gazprom's lack of evidence, Pivert has averred under oath that he is a resident of Venezuela.

Pivert also argues that there is no longer a "pending

dispute," nor is there an ancillary seizure case, pending in Venezuela, and at the time Gazprom filed its application, Pivert was not a party to any proceedings.

Pivert further insists that the plain language of the statute demonstrates that to "reside" or "be found" under § 1782 requires physical presence in the district.  Physical presence for residency can be shown by such facts as ownership of property, location of full time employment, location of tax returns, and the amount of time spent in the district, with no one factor being dispositive.

Pivert argues that courts have determined that personal service of the subpoena establishes that the person "is found" in the district.  *Edelman*, 295 F.3d 171; *In re Godfrey*, 526 F. Supp. 2d 417.  Gazprom cannot show that it personally served Pivert with a subpoena from the Court in this district after it filed its application and cannot show that Pivert resides in this district since the evidence firmly shows he does not.

As for G. Energy Solutions, not only did it forfeit its corporate existence in Texas in February 2014 (#17-16 p. 4), but Pivert is not listed as the registered agent, which is identified as Gustavo E. Soloranzo, and it is also not the sole contact (#17-16 Ex. G at pp. 2-3).

Pivert concurs with the Magistrate Judge's analysis of the *Intel* discretionary factors and notes that Gazprom has failed to challenge the substance of her analysis and also urges that the

evidence sought from Pivert, as well as Pivert, appears to be located in Venezuela where Gazprom should direct its efforts to secure discovery.

### This Court's Review and Determination

In light of Gazprom's seeming total objection to the Magistrate Judge's order and recommendation, the Court has carefully reviewed the entire record *de novo* before making a decision in this action.

Gazprom objects that the magistrate judge has "improperly elevated the *residency* standard to *domicilary* standard" (a permanent residence), and that while Pivert has arguably shown that he is not domiciled in this district, has submitted no evidence that he is no longer a resident of the district. #49 at pp. 16-17. First, the Court emphasizes that Petitioner/interested party Gazprom, not Pivert, bears the burden of proving that it has met the three statutory jurisdictional prerequisites to obtaining discovery under § 1782(a), including that Respondent Pivert either "resides" in this district or is "found" in this district within the meaning of § 1782. *In re Godfrey*, 526 F. Supp. 2d at 419; *Minis v. Thomson*, No. 14-91050-DJC, 2014 WL 1599947, at *1 (D. Mass. Apr. 18, 2014). After reviewing all the evidence and the applicable law, the Court agrees with Magistrate Judge Stacy that Gazprom has failed to do meet the first step of the inquiry.

With respect to the first, jurisdictional inquiry under §

1782, there is no dispute that at the time Gazprom filed its application under § 1782(a), Gazprom qualified as an "interested party" as a defendant in the proceedings before the Venezuelan court.  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . .").  While the statute requires that "the discovery sought be for use in a proceeding before a foreign tribunal," the fact that the proceedings against Gazprom have now settled does not deny Gazprom's standing here.  The fact that Gazprom can still sue Pivert in Venezuela for alleged fraudulent conduct in his role in constructing the plant is a factor supporting retaining Gazprom's application.  Although there have been objections that no suit has yet been filed against Pivert in Venezuela, the United States Supreme Court in *Intel* held that the proceeding for which discovery is sought does not need to be pending or imminent, but only with "reasonable contemplation" at the time of the request for assistance is made.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

This Court agrees with the Magistrate Judge that the evidence overwhelmingly demonstrates that Pivert has not been "found" in this district, i.e., has not been personally served while physically in this Court's jurisdiction, and indeed, has not been in this district since 2013.  *Edelman*, 295 F.3d at 179, with

*Godfrey* in accord, 526 F. Supp. 2d at 421-22.

Thus the central dispute here is whether Pivert "resides" within this district, with Gazprom arguing that Privet owns property here, pays taxes on it here, and receives correspondence and telephone calls at his Skyflower address. The statute does not define the term "resides," nor does it identify criteria for determining if a respondent "resides" within the jurisdiction. The parties have not cited, nor has the Court found, any cases in the Fifth Circuit construing the term "resides" in the context of § 1782.

In *In re Kolomoisky*, No. M19-116, 2006 WL 2404332 at *3 and n.3 (S.D.N.Y. Aug. 18, 2006), the district court opined that

> "resides" can mean either "residence" or domicile." . . . *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004). Further, "despite the generally distinct meanings of 'residence' and 'domicile,' those terms 'may have an identical or a variable meaning depending upon the nature of the subject-matter of the statute as well as the context in which the words are used.'" *Id*. at 125 n.6 (2d Cir. 2004), quoting *Perkins v. Guaranty Trust Co. of New York*, 274 N.Y. 250, 259, 3 N.E. 3d 849 (1937).

Another district court wrote in *In re Application of Yukos Hydrocarbons Investments Ltd.*, 2009 WL 5216951 at *5 (N.D.N.Y. Dec. 30, 2009),

> The test for determining "residence" often employed by New York courts, most frequently in the context of deciding questions of venue, turns on "whether [the individual] has a significant connection with some locality in the State as a result of living there for some length of time during the course of the year." [*Antone v. General Motors Corp.*, 391 F.3d 120, 125 (2d Cir. 1984).] Accordingly, for example, one court held

that a temporary residence frequented by a litigant for business purposes on only occasional overnight visits throughout the year did not qualify as a residence. See *Hammerman v. Louis Watch Co.*, 7 A.D. 2d 817 (3d Dep't 1958). Similarly, another court found the fact that a woman had visited a locale and rented a room, voicing an intent to remain, was insufficient to show that she had established a residence in New York, separate from her home in another location. See *Siegfried v. Siegfried*, 92 A.D. 916 (2d Dep't 1983)("Although a person may have more than one residence for venue purposes, 'to consider a place as such he [or she] must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency.'").

Under Texas law the term "residency has various meanings, depending on its context, but usually requires that the individual be physically present and have an intention to remain. *Smith v. Bd. of Regents of the Univ. Of Houston Sys.*, 874 S.W. 2d 706, 712 (Tex. App.--Houston [1st Dist.] 1994, writ denied)(*citing Martinez v. Bynum*, 461 U.S. 321, 330 (1983)("Although the meaning may vary according to context, 'residence' generally requires both physical presence and an intention to remain.")), *cert. denied*, 115 S.Ct. 1964 (1995). If a person comes to a place only temporarily with no intention of making it his home, that place is not deemed the person's residence. *Slusher v. Streater*, 896 S.W. 2d 239, 243 (Tex. App.--Houston [1st Dist.] 1995, no writ). Under the Texas Property Code, for a house to be a residence, it must be occupied over a substantial period of time and must be permanent rather than temporary even to qualify as a second residence. *Howell v. Mauzy*, 899 S.W. 2d 690, 697 (Tex. App.--Austin 1994, writ denied).

-28-

The evidence in the record shows that Pivert was not physically present, nor personally served, in this district when Gazprom made its application, and from the evidence has apparently not been present in this district since 2013. There is no evidence that Pivert intended to make the Skyflower house his permanent home; rather, the reverse is true.

In *In re Kolomoisky*, 2006 WL 2404332, at *3, the district court found that it was "not necessary . . . for [it] to precisely delineate the meaning of 'resides' in Section 1782 because we do not have sufficient evidence to find that Vekselberg resides in New York under any definition of the word." This Court finds the same to be true here. The Court observes that the term "resides" is in the present tense and finds that the evidence submitted overwhelmingly shows that Pivert for the last several years, certainly since before Gazprom filed its application for assistance and most likely since march 2013, has resided in Venezuela and has not been in this district. Pivert has submitted a sworn statement (#16, Ex. 1) that he is a French citizen and a resident of Puerto La Cruz, Republic of Venezuela since 2000. Furthermore Drake's deposition testimony (#27-3) undermines Gazprom's insistence that Pivert resides in this district and supports Pivert's claim that he lived here only temporarily and that he is a resident of Venezuela,

where he has lived for twenty years and intends to stay.[11]  While
Gazprom contests Pivert's statement that he has never been a
resident of any location in the Southern District of Texas, but
only a tourist for three months, and that the only time and place
he has "resided" in the United States was when he was on a student
visa in college in Louisiana from 1991-94, Gazprom has not produced
any evidence to counter his claim that he was last in Houston in
2013, and then only temporarily, regardless of whether he was there
as a tourist or for work, from January--March 2013, and he has not
returned since, or that he had an intent to make his permanent home
in this district.

     Gazprom's argument that Privet owns property here (and pays
taxes on it here) is not sufficient to make him a resident.  Nor is
the allegation that he receives correspondence and telephone calls
in this district that are then forwarded to Venezuela, where he

---

[11] Drake testified at his deposition (Transcript Ex. B to
#27) to the following. Pivert moved to Houston around 2011 or
2012, Drake saw Pivert only once in the United States, that the
house was vacant when Drake moved in in May 2014 and looked as if
it had been a while since anyone lived there, he never saw Pivert
at the Chrisman Rd. address (where Drake did an internship), nor
did Pivert have an office there, and that Drake stacked any mail
or packages he received at the Skyflower house addressed to
Pivert, including envelopes that might have been the notices of
deposition from Gazprom and letters from Bryan Cave law firm
(attorneys for Gazprom), and once gave all the mail to Mr. Jorge
Santos, Lindsayca's president, who presumably forwarded or
delivered it to Pivert in Venezuela.

lives.[12]

In sum, the Court concurs with the Magistrate Judge's finding that for purposes of Gazprom's § 1782(a) application for assistance, the evidence shows that at the time of Gazprom's application filing, Pivert did not and still does not reside in this Court's jurisdiction, nor did he, nor does he, have any intention of any lengthy, no less permanent residence here.  As indicated *supra*, the evidence shows that Pivert cannot now be found nor at any reasonable time in the future is it likely he would be found in this district within the meaning of § 1782.  Therefore the Court lacks subject matter jurisdiction over Pivert and must deny Gazprom's application.

Even if Gazprom had shown that it satisfied the statutory

---

[12] In *American Assistance to Litigation in Foreign and International Tribunals:  Section 1782 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Comm. 1, 9 (1998), Hans Smit discusses the persons reached by the statute, i.e., those who "reside" or are "found" in the district of the court to which the application is made.  He, too, notes, "There are no generally prevailing rules of in personam competence to which Section 1782 might be argued to refer" so "[t]he quoted language must therefore be given its own meaning."  Emphasizing that "[t]he purpose of Section 1782 is to liberalize the assistance given to foreign and international tribunals, Smith argues,

> This means that a person should be regarded as residing in the district not only when it is domiciled there, but also when it is resident there in the sense of residing in the district **for some not insignificant period of time**.  Indeed, if the relationship of the person addressed to the district is such to warrant the exercise of in personam authority under the due process clause, it should be regarded as "resident" there. [Emphasis added by the Court]

jurisdictional prerequisites, in weighing the discretionary facts established in *Intel*, this Court finds that the Magistrate Judge has not abused her discretion and that she did not err in her determination that the *Intel* factors weigh heavily in favor of now denying Gazprom's application.  The Court agrees that its order granting that application should be VACATED and Gazprom's § 1782(a) application should be denied.

Gazprom has not submitted any evidence showing that the documents it seeks to have produced are within this district or within the United States, and Pivert is clearly not currently here to give oral testimony.  Because the parties agree that Pivert's deposition can be taken in Venezuela, where he resides and where Gazprom is headquartered, i.e., where they both can be "found," and where both are subject to the Venezuelan court's jurisdiction, allowing Gazprom to take Pivert's deposition in this country would be inappropriate, not to mention that hauling both into this Court would be impractical and unduly intrusive and burdensome for both parties.  *See, e.g., Intel*, 542 U.S. at 264 ("[U]nduly intrusive or burdensome requests may be rejected or trimmed.").  While the parties agree that the Venezuelan court would be receptive to United States federal-court assistance, there is no need to seek the documentary and oral evidence in this country since it is readily available in Venezuela.  Gazprom also has not argued, and there is no evidence showing, that Gazprom's application

constitutes an end-run around "foreign proof-gathering restrictions or other policies" of Venezuela.  *Intel*, 542 U.S. at 264.

Accordingly, the Court in its discretion ADOPTS the Magistrate Judge's report and memorandum as its own and

VACATES its order granting Gazprom's application for assistance (#7).  The Court further

ORDERS that Gazprom's application is DENIED.  Gazprom can pursue its claim for relief in Venezuela.

**SIGNED** at Houston, Texas, this _6th_ day of _July_, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-33-